Elbert L. BOWLING, Plaintiff–Appellant,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellee.

No. 94–30093 Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 18, 1994.

Elbert L. Bowling, pro se.

Rebecca L. Rome, Asst. Regional Counsel, Office of Gen. Counsel, Dept. of HHS, Dallas, TX, Lyman E. Thornton, III, Asst. U.S. Atty., L.J. Hymel, U.S. Atty., Baton Rouge, LA, for appellee.

Before DUHÉ, WIENER and STEWART, Circuit Judges.

PER CURIAM:

In this Social Security case, *pro se* Plaintiff–Appellant Elbert L. Bowling appeals the district court's affirmance of the denial of disability insurance benefits by Defendant–Appellee Donna E. Shalala, Secretary of Health and Human Services (the Secretary), under 42 U.S.C. § 405(g). On appeal Bowling complains that the Secretary's decision is not supported by substantial evidence and that the Administrative Law Judge (ALJ) failed to develop the record adequately. Verbalizing for the first time in this circuit the appropriate test for determining when a defective hypothetical question posed by an ALJ to a vocational expert will produce reversible error—and applying that test to the instant facts—we find such error and therefore vacate and remand this case for further proceedings consistent with this opinion. Also recognizing the possibility that in developing the record the ALJ may have failed to discharge the heightened duty to explore for relevant facts when the claimant is proceeding *pro se*, we conclude that here any such error would be harmless in light of our vacating and remanding this case for other reasons, i.e., the flawed handling of the hypothetical question.

I

FACTS AND PROCEEDINGS

Bowling, a 38–year old high school graduate with an associate degree in computer electronics, has proceeded *pro se* throughout this entire action. His past relevant work experience is as an electrician. He has a history of congenital bladder and kidney problems which required five renal surgeries "by the time [he] was six years old," and also suffers from knee problems, back problems, hypertension, pain, and anxiety.

Following a work related injury, Bowling underwent surgery on May 28, 1986, to correct petellofemoral chondromalacia of the left knee. After over a year's physical therapy and rehabilitation, Bowling was released to return to work on July 7, 1987, subject to a number of limitations and restrictions.

He filed for disability insurance benefits on April 14, 1987, alleging disability resulting from his left knee surgery and from high blood pressure, with an onset date of May 26, 1986. He requested and obtained a hearing before an ALJ, after which the ALJ ruled that Bowling was not disabled. That decision was vacated by the Appeals Council (AC) and remanded to the ALJ for a "complete evaluation of pain as a disabling factor."

A subsequent hearing was held on February 15, 1989, before a different ALJ (second ALJ) who found that Bowling was disabled for a closed period from May 28, 1986, through July 7, 1987, but not thereafter. During this February 1989 hearing, the second ALJ would not permit Bowling to introduce evidence of back problems, informing him that if he wished to submit a claim for disability resulting from back problems, he should file another application.

On May 5, 1989, Bowling filed another application for disability insurance benefits and for supplemental security income (SSI) benefits as well, asserting a new onset date of November 1, 1987, and listing as ailments knee, back, nerve and kidney problems. On January 31, 1990, a hearing was held before yet another ALJ (third ALJ), who determined that Bowling could not perform his past relevant work but could perform a full range of light work. The third ALJ thus concluded, relative to Bowling's May 1989 application, that he was neither disabled nor eligible for any benefits except those previously awarded for the closed period.

On February 11, 1991, the AC interpreted the May 1989 application as an appeal of the March 1989 ruling, re-opened that decision,

and remanded to the third ALJ. In this remand order the AC agreed with the second ALJ's determination regarding a closed period of disability. The AC determined, however, that the second ALJ "did not address the issue of medical improvement" and directed that on remand the third ALJ "consolidate both files ... [and] obtain updated medical evidence from [Bowling's] treating source and a medical assessment describing [Bowling's] ability to perform work related activities." That ALJ was also directed to make specific findings as to whether Bowling's impairment had medically improved, with reference to 20 C.F.R. § 404.1594. .

On April 29, 1991, the AC issued a supplemental ruling, limiting the February 1991 remand to Bowling's claim for disability insurance benefits only. The April 1991 supplemental remand order also vacated the third ALJ's January 31, 1990, decision. In so doing, the AC noted that the third ALJ had relied on two inconsistent reports from Dr. Efrain Reyes. The AC determined that additional "medical development" was required, and ordered the third ALJ to obtain an orthopedic consultative examination and a medical assessment of Bowling.

Consistent with the second (and supplemental) remand order, a hearing was conducted on October 17, 1991, which pertained to all claims for disability insurance benefits from May 26, 1986, to the date of the October 1991 hearing, and SSI benefits from November 1, 1987, to that hearing date. The claims from and after November 1987 included the relevant impairments of left knee problems, high blood pressure, disabling pain, back problems, nerve problems, and kidney problems. Significant to our analysis here, the November 1987 hearing turned on an answer to a hypothetical question posed to the vocational expert by the third ALJ.

In a November 29, 1991, decision of the third ALJ, Bowling was granted disability insurance benefits for a closed period from May 28, 1986, through July 7, 1987, but was denied all other benefits. The denial was based on a finding that from July 7, 1987, onward Bowling's medical condition had improved, and that he had the residual functional capacity for the full range of light work

reduced by some limitations. The third ALJ first determined that Bowling was unable to perform his past relevant work; then found that Bowling's "additional nonexertion limitations [would] not allow him to perform the full range of light/sedentary work," but that there were still a significant number of jobs he could perform; and concluded finally that Bowling thus was not disabled.

Bowling appealed the November 1991 decision, but his appeal was denied. After a request to re-open was also denied, Bowling filed a complaint in federal district court. Both Bowling and the Secretary moved for summary judgment, and Bowling opposed the Secretary's motion. The magistrate judge recommended that the Secretary's motion be granted, and that Bowling's motion for summary judgment be denied and his complaint dismissed. Bowling filed objections, but the district court adopted the magistrate judge's recommendation, overruled Bowling's objections, and granted summary judgment for the Secretary. Final judgment was entered accordingly, and this appeal ensued.

## II

### ANALYSIS

#### A. Lack of Substantial Evidence

■ Bowling contends that the Secretary's finding that he was not disabled is not supported by substantial evidence. "Appellate review of the Secretary's denial of disability benefits is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir.1990). In applying the "substantial evidence" standard, we "may not reweigh the evidence in the record, nor try the issues *de novo,* nor substitute [the Court's] judgment for the Secretary's, even if the evidence preponderates against the Secretary's decision." *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir.1988). This is so because "substantial evidence" is less than a preponderance but more than a scintilla. *Id.*

██ A claimant is not entitled to disability benefits unless he establishes that he is unable "to engage in any substantial gainful activity by reason of [a] medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 423(d)(1)(A). In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process.

The rules governing the steps of this evaluation process are: (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *Villa,* 895 F.2d at 1022.

"A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the Secretary's analysis." *Harrell,* 862 F.2d at 475. The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five. *Anderson v. Sullivan,* 887 F.2d 630, 632–33 (5th Cir.1989).

██ This case reached step five. We cannot discern, though, whether in determining that the Secretary had carried her burden the ALJ was relying on the medical-vocational guidelines (the "Grid") or the vocational expert's testimony. To establish that work exists for a claimant, the Secretary may rely on the Grid, only if the guidelines' evidentiary underpinnings coincide exactly with the evidence of disability appearing in the record. *Scott v. Shalala,* 30 F.3d 33, 34–35 (5th Cir.1994); 20 C.F.R. Pt. 404, Subpt.P, App. 2

§ 200.00(a) (1994) ("Where any one of the findings of fact does not coincide with the corresponding criterion of a rule [within the Grid], the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled.").

If on the one hand the ALJ here relied solely on the Grid, the Secretary did not meet her burden of proof because the ALJ found that Bowling was not capable of performing a full range of any particular category of work, *see Fields v. Bowen,* 805 F.2d 1168, 1170–71 (5th Cir.1986) (citation omitted); and the evidentiary underpinnings pertaining to the application of the Grid do not coincide with the evidence of disability found in the record. *See Scott,* 30 F.3d at 34–35. If on the other hand the ALJ was not relying on the Grid but on the vocational expert's testimony, the Secretary still may not have carried her burden. Although there is a dearth of applicable jurisprudence establishing the applicable standard in such situations, the issue appears to be whether the hypothetical question used reasonably incorporates the disabilities recognized by the ALJ. *See Morris v. Bowen,* 864 F.2d 333, 336 (5th Cir.1988); *Rodriguez v. Shalala,* No. 93–8712 (5th Cir. Aug. 25, 1994) (unpublished).

*Morris* concerned, *inter alia,* a contention that the hypothetical question posed by the ALJ to the vocational expert was "too abstract to reflect Morris's particular disabilities." *Id.* at 336. The ALJ posed such a question in which he "asked what employment would be available to someone having the disabilities which [the ALJ] found Morris to have." *Id.* at 335. Morris's representative was allowed to "mention[ ] to the vocational expert additional disabilities, although those disabilities were not recognized in the ALJ's findings." *Id.* The vocational expert "narrowed his list of available jobs in order to accommodate the additional limitations." *Id.*

In *Morris,* we determined that no reversible error occurred, in that "the hypothetical [question] reasonably incorporated the disabilities recognized by the ALJ, and that Morris's representatives had an opportunity to correct any defect in the hypothetical by

mentioning additional limitations to the vocational expert." *Id.* at 336. This reasoning was reiterated in *Rodriguez,* op. at 10 n. 3.

■ From the teachings of *Morris* and *Rodriguez,* then, this circuit's test for determining when a defective hypothetical question will produce reversible error becomes clear: Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand. *See also Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir.1984) ("Unless there is record evidence to adequately support [assumptions made by a vocational expert], the opinion expressed by the vocational expert is meaningless.").

■ In the instant case, the hypothetical question does not appear reasonably to incorporate Bowling's disabilities. And, as discussed below, Bowling was never given any "real" opportunity to correct any defects in the hypothetical. Under the test just enunciated, the ALJ committed reversible error.

The ALJ specifically found that Bowling had "the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for no lifting of more than 20 pounds." The hypothetical question posed to the vocational expert, however, assumed that Bowling "could occasionally lift and carry 50 pounds" and "could frequently lift and carry 20 pounds." That question also assumed that Bowling "has some degree of problem with his kidneys; however, according to his own testimony this has been resolved." Regrettably, there is simply no record support for that statement.

The ALJ's findings state that the "medical evidence establishes that [Bowling] has severe kidney problems." The record medical evidence indicates that, due to left vesicour-

eteral reflux, Bowling underwent a left ureteral reimplant in his left kidney, performed by Dr. Robert Kidd on May 22, 1989. On June 8, 1989, Dr. Kidd expressed the opinion that Bowling had "an extensive and long past urological history consisting of a problem with urinary incontinence at birth requiring a bladder neck reconstructive procedure," and that he also had a horseshoe kidney, which "required division of the isthmus, and also a left lower pole heminephrectomy for stone disease and chronic pyelonephritis."

Dr. Kidd further stated that due to the May 1989 surgery, which was performed nearly two years after the end of Bowling's "closed period" of benefits, Bowling would "be essentially without the ability to find gainful employment for at least the next six months as he recovers from both this surgery and from his multiple urological abnormalities." Dr. Kidd was also of the opinion that, on August 25, 1989, Bowling had developed "a pattern of chronic infection (of the kidneys), which may or may not be curable." Additionally, prior to the surgery, Dr. Kidd ventured that Bowling would "probably be disabled as a result of the up-coming surgery and may or may not recovery [sic] enough function to return to active status."

On July 29, 1991, more than two years after the kidney surgery, Dr. Kidd reported that although Bowling underwent surgery to correct his reflux problems:

> due to significant damage from his long history of reflux, and a possibility of him [sic] losing both his kidneys, he has been left essentially a urinary cripple, as far as urinary tract infections are concerned. He has had multiple episodes of cystitis and polyneuritis which again are taking much of his renal capacity from him.

Further, in Dr. Kidd's opinion, Bowling "has a problem with long term renal insufficiency on [the] basis of chronic infections and *more than likely will be hampered in performing of routine physical activities.*" *Id.* (emphasis added).

In posing the subject hypothetical question to the vocational expert, the ALJ stated that, according to Bowling's "own testimony," the

kidney problems had been resolved.[1] That, however, is a mischaracterization of Bowling's testimony. Concerning the May 1989 kidney operation, Bowling testified that Dr. Kidd had performed the operation and had repaired the reflux, and stated that "[w]e're pretty sure that it works now." This comment, when taken in context and combined with the medical opinions rendered by Dr. Kidd, shows that the ALJ was simply wrong in determining that Bowling's testimony indicated that his kidney problems were resolved. Therefore, in addition to the mischaracterization of Bowling's lifting capacity, the ALJ, when posing the hypothetical question, also misrepresented the actual condition of Bowling's kidneys.

In light of the foregoing, we must vacate the district court's grant of summary judgment for the Secretary. But as the third ALJ's grant of a closed period of benefits, from May 28, 1986, to July 7, 1987, is not challenged by the Secretary, we do not disturb the rendition of benefits for that closed period.

Nevertheless, we must remand this matter to the Secretary to determine whether Bowling is entitled to benefits after July 7, 1987. It is reasonable to conclude that Bowling was disabled at least from the date of his kidney surgery, May 22, 1989, through July 1, 1991, the date of Dr. Wilson's orthopedic evaluation, although in light of Dr. Kidd's opinion of July 29, 1991, Bowling's disability may well have continued beyond the July 1, 1991, date and may still be ongoing.

B. *Adequacy of Development of the Record*

 Bowling contends that the ALJ failed to develop the records relative to the February 1989 and October 1991 hearings adequately. When a claimant is unrepresented by counsel, the ALJ has a duty "scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler,* 731 F.2d 1216, 1219–20 (5th Cir.1984) (internal quotation and citation omitted). We shall, however, reverse an ALJ's decision for failure to develop the record adequately only if a claim-

ant shows that he was prejudiced as a result of the hearing. As Bowling was afforded two additional hearings after the February 1989 hearing, in both of which medical facts were developed further and Bowling was allowed to submit additional medical evidence, he has not shown such prejudice.

The most recent remand order directed the ALJ to obtain an orthopedic consultative exam and a medical assessment, yet we find nothing in the record to reflect that any medical assessment was thereafter conducted concerning Bowling's kidney condition. The orthopedic evaluation was conducted on July 1, 1991, by Dr. Stephen Wilson. He concluded that Bowling could return to some form of gainful activity if correctly motivated. Dr. Wilson also noted that Bowling had had "multiple surgical procedures done for kidney problems; however, on evaluation of orthopedic problems today concerning his back and left knee, [Dr. Wilson found] no objective findings other than for the minimal degenerative changes present." Especially in light of Bowling's *pro se* status and the ALJ's heightened factual exploration duty which that entails, the ALJ does not appear to have properly and adequately developed the record with regard to Bowling's kidney condition and the extent to which Bowling may have been disabled thereby.

As for the October 1991 hearing, Bowling refers to the vocational expert in claiming that the ALJ "blocked [Bowling's] right ... to cross-examine the ALJ's expert witness." When the ALJ asked Bowling if he wished to question the expert, Bowling responded by asking the ALJ whether the expert had "seen the medical restrictions." The ALJ then stated that it was up to the ALJ to tell the vocational expert what the ALJ thought the medical restrictions were.

When Bowling then asked the expert whether Dr. Kidd's reports concerning Bowling's kidney condition figured into the expert's determinations, the ALJ answered that he (the ALJ) had given the vocational expert "the hypothetical that [Bowling's] kidney problem had been practically resolved."

---

1. In his brief to this court, Bowling asserts that medical efforts to correct his kidney problems have reached a plateau, and that no further medical intervention would help.

When Bowling then referred to Dr. Kidd's letter of July 29, 1991, detailing continuing kidney problems, the ALJ asked Bowling if he had "anything else [he] want[ed] to ask [the expert]." The expert never responded to Bowling's inquiry regarding Dr. Kidd's July 1991 letter. This constituted error on the part of the ALJ, but given our determination today to vacate and remand, the failure of the ALJ in his duties regarding the record of the October 1991 hearing is harmless for lack of prejudice to Bowling.

■ Finally, Bowling argues that the several ALJs failed properly to evaluate his complaints of pain. We agree. An ALJ cannot ignore altogether a claimant's subjective complaints of pain. *Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir.1991). Here, the AC directed the second ALJ to develop "evidence of pain," including the impact of pain medication on Bowling's other medical ailments. The second ALJ could find no "statement" of any pain medication's "adverse effects on [Bowling's] kidney problem ... in any medical report." It is arguable that the second ALJ did not adequately develop the needed testimony and evidence in this regard. *See Kane,* 731 F.2d at 1219–20.

The magistrate judge determined that the third ALJ's failure to consider four letters submitted to the AC concerning Bowling's pain was "harmless error." No jurisprudential authority for the application of a "harmless error" analysis is cited, and we are aware of none. The third ALJ also failed to develop facts regarding the negative side effects, if any, that the pain medication would have on Bowling's kidney disorders. Again, however, the failure of the ALJ's heightened duty to develop the record adequately becomes harmless in light of our decision to vacate and remand, thereby eliminating any prejudice that Bowling may otherwise have suffered.

### III

### CONCLUSION

Having concluded in section IIA. above that the ALJ's defective handling of the hypothetical question to the vocational expert produced reversible error, we are con-strained to vacate and to remand this case for further proceedings not inconsistent with the foregoing opinion. Even though it is also arguable that, in connection with development of the record, the ALJ may have violated the heightened duty to explore for all relevant facts when the claimant is proceeding *pro se,* we nevertheless conclude that any such error would here be harmless in that we are vacating and remanding on other grounds.

VACATED and REMANDED.