Henry T. BRIDGES, Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, Defendant.

No. 3:01–CV–00413–G.

United States District Court, N.D. Texas, Dallas Division.

July 29, 2003.

Ronald D Honig, Law Office of Ronald D Honig, Dallas, TX, for Plaintiff.

Shane Read, U.S. Attorney's Office Department of Justice, Dallas, TX, for Defendant.

## ORDER

FISH, Chief Judge.

Before the court are the findings, conclusions, and recommendation ("findings") of the United States Magistrate Judge, filed July 7, 2003, and the defendant's objection to the findings ("objection"), filed July 17, 2003. The defendant objects only to paragraph II(G) of the findings, in which the Magistrate Judge interpreted *Watson v. Barnhart*, 288 F.3d 212, 217–18 (5th Cir.2002), to "require[ ] the Commissioner to find that a physically-impaired claimant can both obtain and maintain employment before finding the claimant not disabled at step five of the sequential five-step disability inquiry." Objection at 1 (internal quotation marks omitted). The court agrees with the defendant's objection and will not adopt paragraph II(G) of the findings. There being no objection to the remainder of the findings, and the court being satisfied after a review of the record that the remainder of the findings are correct, it is **ORDERED** that the findings, except for paragraph II(G), are **ADOPTED** as the findings and conclusions of the court.

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and an Order of the Court in implementation thereof, subject cause has been referred to the United States Magistrate Judge. Before the Court are the Plain-

tiff's *Motion for Summary Judgment*, filed July 2, 2001, and Defendant's *Motion for Summary Judgment*, filed July 30, 2001. Having reviewed the evidence of the parties in connection with the pleadings, the undersigned recommends that the Plaintiff's motion for summary judgment be **GRANTED** and that the Defendant's motion for summary judgment be **DENIED**. Accordingly, the case should be **REVERSED** and **REMANDED** with instructions.

## I. BACKGROUND[1]

### A. Procedural History

Plaintiff Henry T. Bridges ("Plaintiff") seeks judicial review of a final decision by Defendant Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability benefits. Plaintiff filed his application for disability benefits under Title II of the Social Security Act on December 28, 1995,[2] claiming a disability onset date of March 6, 1990. (Tr. at 48, 57.) His application was denied both initially and upon reconsideration. (Tr. at 26–29, 33–35). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 36.) At his first hearing in July 1997, Plaintiff opted not to proceed without counsel. (Tr. at 437.) Despite not obtaining counsel, Plaintiff proceeded with a second hearing on March 24, 1998. (Tr. at 442–69.) The ALJ issued an unfavorable decision on November 16, 1998, concluding that Plaintiff could perform jobs other than his past relevant work. (Tr. at 9–19.) On February 2, 2001, the Appeals Council denied

Plaintiff' request for review, thereby rendering the ALJ's unfavorable decision the final decision of the Commissioner. (Tr. at 4–6.) Plaintiff then brought this timely appeal to the United States District Court pursuant to 42 U.S.C. § 405(g).

### B. Factual History

#### 1. Plaintiff's Age, Education, and Work Experience

Plaintiff's date of birth is April 11, 1946. (Tr. at 48.) His formal education ended in elementary school, although there is conflicting testimony as to which grade he completed. (Tr. at 447.) In any event, Plaintiff claims not to be able to "read that good." (Tr. at 440.) Plaintiff's past relevant work was as a laborer in the construction industry. (Tr. at 65, 462.)

#### 2. Plaintiff's Medical Evidence

In his disability report, submitted on December 28, 1995, Plaintiff listed his disabling conditions as "bad heart and a bad leg," high blood pressure, and blindness in his left eye. (Tr. at 57, 64.) As noted above, he claims a disability onset date of March 6, 1990. (Tr. at 57.) Because the ALJ declined to review the period after March 6, 1992 due to Plaintiff's incarceration, and because this Court need not review the medical evidence for that period in light of its recommendation below, the Court will only detail the medical evidence of record that falls between March 6, 1990, and March 6, 1992.

Plaintiff was examined at Parkland Memorial Hospital ("Parkland") on May 14,

---

1. The following background facts come from the transcript of the administrative proceedings, which is designated as "Tr."

2. Plaintiff filed his Title II application from prison on December 28, 1995. (Tr. at 48, 448.) The record reflects that he served a continuous prison sentence from March 6,

1992, to April 27, 1998, for felony possession of controlled substances. (Tr. at 16, 77, 449, 456.) Therefore, Plaintiff's date last insured for Title II disability eligibility-December 31, 1995–elapsed during his incarceration. (Tr. at 52.)

1991. During that examination, Dr. Wimberly diagnosed hypertension after recording blood pressure readings of 210/122, 208/126, and 177/112. (Tr. at 100–01.) The doctor noted that Plaintiff was off his medications at the time. *Id.* Plaintiff returned to Parkland on October 1, 1991, where a "huge cardiac silhouette" and an "apparent enlargement of [the] left atrium" was noted. (Tr. at 98.) Plaintiff had blood pressure readings of 224/120, 210/130, and 180/110; however, the nurse noted that Plaintiff had been off medication for three weeks. (Tr. at 97.) During the same visit, Dr. Rainwater diagnosed hypertension. (Tr. at 96.)

At a visit to Parkland on November 13, 1991, it was noted that Plaintiff suffered from heart disease and hypertension, after recording a blood pressure reading of 130/88. (Tr. at 94.) The hospital reported that Plaintiff sought a refill of his medications and that he still had a "few pills left." *Id.*

On January 27, 1992, Drs. Converse and Peshock of Parkland observed "concentric left ventricular hypertrophy," "[l]eft atrial enlargement, left ventri-cular enlargement," "[m]ild aortic insufficiency," "[m]ild mitral regurgitation," and "[s]mall pericardial effusion." (Tr. at 92.) However, the doctors also reported that the right side chamber was of normal size and that the valves were structurally normal. *Id.* Dr. Reynolds noted a "markedly enlarged" heart with "probable biventricular enlargement" and normal aorta. (Tr. at 89.) Plaintiff was also found to be suffering from hypertension after a blood pressure reading of 212/116. (Tr. at 88.) Once again, the hospital noted that Plaintiff had not taken his medications that day. *Id.* Plaintiff was diagnosed with "poorly controlled" hypertension. (Tr. at 87.)

### 3. Hearing Testimony

Plaintiff's hearing took place on March 24, 1998, following a continuance in July 1997 to allow Plaintiff an opportunity to obtain counsel. (Tr. at 437, 442.) Despite the continuance, Plaintiff was not represented by counsel at his March 1998 hearing. (Tr. at 444.) Plaintiff testified that he walks with a cane. (Tr. at 454.) He further stated that he can walk up to 50 yards, sit up to 25 minutes, stand up to 25 minutes, and lift up to 20 or 30 pounds. (Tr. at 449–50.)

The Medical Expert ("ME") identified three medical problems: (1) loss of effective vision in the left eye, (2) diabetes, and (3) hypertension. (Tr. at 452–53.) With respect to Plaintiff's loss of vision, the ME concluded that Plaintiff could perceive only light with his left eye-no figures or forms-and that Plaintiff possessed 20/20 vision without correction in his right eye. (Tr. at 452.) With respect to Plaintiff's diabetes, the ME noted that Plaintiff's blood sugar was "approximately twice beyond the range of normal." *Id.* However, the ME found no evidence of "end organ damage" and opined that "a more aggressive or a complete type of treatment and possibly use of insulin would ... give him normal sugars." (Tr. at 452–53.) The ME described Plaintiff's hypertension as borderline controlled in that Plaintiff's blood pressure readings are "essentially normal" with medication. (Tr. at 453.) The ME testified that Plaintiff's impairments did not meet or equal any listing in the Listing of Impairments. (Tr. at 452–53.)

Upon cross-examination by Plaintiff, the ME located evidence in the record that showed "extensive osteoarthritis of the left hip" as of July 1995.[3] (Tr. at 458.) Taking this evidence into account, the ME

---

**3.** The ME had initially claimed that there was no evidence of any left hip impairment in the record; however, at the insistence of Plaintiff that there was an x-ray of his left hip in the

testified that Plaintiff's residual functional capacity ("RFC") would be light for the period of 1990 to 1992 with restrictions of "occasional bending or stooping, but no crawling." (Tr. at 458–59,) Furthermore, the ME testified that Plaintiff's RFC would be sedentary for the period beginning in July 1995 with the same restrictions on bending, stooping, and crawling. However, beginning in July 1995. Plaintiff's RFC would also require a sit/stand option. *Id.* The ME testified that there was no evidence that Plaintiff' heart impairment would affect his RFC. (Tr. at 459–61.)

The Vocational Expert ("VE") classified Plaintiff's past relevant work as laborer in the construction industry (medium to heavy strength, unskilled). (Tr. at 462.) The VE testified that Plaintiff could not perform his past relevant work given the RFC described by the ME. *Id.* Taking into account Plaintiff's age, education, and lack of transferable skills, the ALJ asked the VE two hypothetical questions to determine whether Plaintiff could perform other work in the economy. (Tr. at 462–64.) The ALJ first asked about the sedentary RFC with a sit/stand option, and the VE identified the jobs of telephone solicitor, assembler, and sorter. (Tr. at 463). The VE concluded that there were "many thousands" of such jobs in the economy. *Id.* The ALJ next asked about the light RFC with no bending or crawling, and the VE identified the jobs of plumbing hardware assembler, marker, and hand presser. *Id.* As with the sedentary jobs, the VE concluded that there were "many thousands" of those jobs in the economy. *Id.*

### C.  ALJ's Findings

The ALJ issued his unfavorable decision on November 16, 1998, limiting his

decision to the period of March 6, 1990, to March 6, 1992, the period prior to Plaintiff's incarceration. (Tr. 9–19.) The ALJ expressly excluded the period after March 6, 1992, because Plaintiff "was ineligible to receive benefits for the period of his incarceration." (Tr. 13.) In his findings, the ALJ found that Plaintiff met the disability insured status as of March 6, 1990, and continued to do so until December 31, 1995. (Tr. 18.) Furthermore, the ALJ found Plaintiff's impairments of "left eye blindness, poorly controlled diabetes, borderline controlled hypertension, degenerative osteoarthritis in the left hip, and congestive heart failure" to be severe impairments. *Id.* Next, the ALJ found Plaintiff's statements regarding his impairments "to be not credible to the extent of the residual functional capacity found herein." *Id.* Moreover, the ALJ determined that Plaintiff retained "the ability to perform a wide range of light work," so "long as he is only occasionally required to bend or stoop and is never required to crawl." *Id.* The ALJ found no nonexertional limitations. *Id.* Finally, the ALJ found that Plaintiff could perform the jobs of hardware assembler, marker, and hand presser, all of which exist in "many thousands" in the national economy. (Tr. 19.) As such, the ALJ found Plaintiff to be not disabled within the meaning of the Social Security Act for the period of March 6, 1990, to March 6, 1992. *Id.*

## II.  ANALYSIS

### A.  Legal Standards

#### 1.  Standard of Review

■■■ Judicial review of the Commissioner's denial of benefits is limited to

---

record, the ALJ went off the record to allow the ME to search the file. (Tr. at 455, 457.) Upon recommencing the hearing, the ME had

not only found the left hip x-ray, but he had also studied the x-ray. (Tr. at 458.)

whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan,* 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen,* 864 F.2d 340, 343–344 (5th Cir. 1988).

### 2. *Disability Determination*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett,* 67 F.3d at 563–64; *Abshire v. Bowen,* 848 F.2d 638, 640 (5th Cir.1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.
2. An individual who does not have a "severe impairment" will not be found to be disabled.
3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.
4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir.1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. *Leggett,* 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994). This burden may be satisfied either by reference to the Medical–Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen,* 810 F.2d 1296, 1304 (5th Cir.1987). A finding that a claimant is not disabled at any point

in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen,* 813 F.2d 55, 58 (5th Cir.1987).

### B. Issues for Review

Plaintiff contends that:

(1) the ALJ violated Plaintiff's due process rights by not determining whether Plaintiff was disabled during the time he was incarcerated;

(2) the ALJ relied on incompetent medical expert testimony;

(3) the ALJ ignored significant nonexertional limitations in his questions to the Vocational Expert; and

(4) the ALJ improperly assessed Plaintiff's credibility.

(P.'s Br. at 7–11). The first point challenges the ALJ's decision not to review Plaintiff's alleged disability for the period after March 6, 1992, and the remaining three points challenge the ALJ's unfavorable disability determination for the period of March 6, 1990, to March 6, 1992.

### C. Issue One: Period of Disability

■ Plaintiff contends that the Commissioner violated his Due Process rights by not considering his disability for the period after March 6, 1992, the period of Plaintiff's incarceration. (P.'s Br. at 7–8.)

A disability claimant applies both for cash benefits and for a declaration of a period of disability. *George v. Chater,* 76 F.3d 675, 677 (5th Cir.1996); 20 C.F.R. § 404.320(a). A claimant may seek a declaration of a period of disability even if he or she could not receive benefits for that period. *Id.* The ALJ declined to address Plaintiff's alleged disability after March 6, 1992, because Plaintiff "was ineligible to receive benefits for the period of his incarceration." (Tr. at 13.) The ALJ's failure to consider Plaintiff's allegations of disability for that period is reversible error.

The Commissioner points to Social Security Ruling 83–21 ("S.S.R.83–21") in support of the ALJ's decision to exclude the period of incarceration. (D.'s Br. at 3–6.) S.S.R. 83–21 provides specific procedures for evaluating a claimant's alleged disability when there is a period of incarceration. However, the ALJ did not cite S.S.R. 83–21 in his decision, nor did the ALJ follow the procedures provided in S.S.R. 83–21. Rather, the ALJ refused to evaluate Plaintiff's disability for the period of incarceration simply because Plaintiff would not be eligible to receive cash benefits. (Tr. at 13.) The Commissioner cannot now supplement the ALJ's defective decision with additional legal reasoning. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir.2000).

Accordingly, the case should be **REVERSED** and **REMANDED** with instructions to the Commissioner to evaluate Plaintiff's alleged disability after March 6, 1992 in accordance with the procedures set forth in S.S.R. 83–21.

### C. Issue Two: Medical Expert Testimony

Plaintiff contends that the ALJ relied on incompetent medical expert testimony in reaching the RFC decision at step four of the sequential five-step disability inquiry. (P.'s Br. at 8.) The Commissioner, on the other hand, maintains that substantial evidence supports the ALJ's reliance on the ME's testimony. (D.'s Br. at 6.)

■ An ALJ is not required to obtain the testimony of an ME. 20 C.F.R. § 404.1527(f)(2)(iii) ("[ALJs] *may* also ask for and consider opinions from medical experts.") (emphasis added). However, an ALJ's reliance on the inaccurate or incomplete testimony of an ME is reversible error unless other substantial evidence

supports the ALJ's decision. *Carey v. Appel*, 230 F.3d 131, 142 (5th Cir.2000) (noting that inaccuracies in ME testimony are not reversible error when there is no indication in the record that the ALJ accepted or relied upon the objectionable portions of the ME's testimony).

■ In this case, the ME described only three of Plaintiff's five severe impairments during his direct examination, omitting the hip and heart impairments. (Tr. at 452–53.) On cross-examination, the ME revised his initial RFC opinion after conceding that he had overlooked evidence of the hip impairment. (Tr. at 458.) The ME also concluded that there was no evidence in the record that the heart impairment would affect Plaintiff's RFC. (Tr. at 460–61.) However, as detailed above, the record contains four pages of evidence regarding Plaintiff's heart impairment for the period of March 6, 1990, to March 6, 1992. (Tr. at 89, 92, 94, 98.) Because the ME failed to recognize the heart impairment in his description of Plaintiff's severe impairments and admittedly overlooked relevant evidence in the record, it is not clear whether the ME considered the evidence of Plaintiff's heart impairment in his assessment of Plaintiff's RFC.

The ALJ found that Plaintiff "retains the ability to perform a wide range of light work in that he is able to lift and/or carry up to 20 pounds occasionally, and 10 pounds frequently, stand and/or walk for 6 hours of an [8] hour workday, and sit 2 hours of an 8 hour workday as long he is only occasionally required to bend or stoop . . . and is never required to crawl." (Tr. at 16–17.) The ALJ's RFC decision is nearly identical to the ME's RFC assessment, demonstrating the ALJ's reliance on the ME's assessment of Plaintiff's RFC. The ME opined that Plaintiff could perform light work with occasional bending or stooping but no crawling. (Tr. at 458–59.) In addition to the ME's testimony, the ALJ purports to attribute "great weight" to the RFC reports of the state agency medical consultants. (Tr. at 17.) Significantly, the record does not contain any RFC reports from the state agency medical consultants, nor should it. The state disability determination agency found Plaintiff not disabled at step two of the sequential five-step disability inquiry, and an RFC determination is not necessary until step four.[4] (Tr. at 22, 24.) Because the ALJ attributed "great weight" to nonexistent RFC reports, the ALJ failed to rely on substantial evidence-independent of the ME's testimony-in reaching his RFC decision.

In sum, the Court cannot determine whether the ME's testimony, by itself, provides substantial evidence for the ALJ's RFC decision. Independent of the ME's testimony, the ALJ's reliance on nonexistent RFC reports does not provide substantial evidence for the ALJ's RFC decision. Accordingly, the case should be **REVERSED** and **REMANDED** for further administrative proceedings.

### E. Issue Three: Nonexertional Limitations

■ Plaintiff contends that the ALJ erred by failing to include significant nonexertional limitations in his hypothetical questions to the VE. (P.'s Br. at 9.) Specifically, Plaintiff lists the nonexertional limitations of "single eye vision"; illiteracy;

---

4. Forms SSA–831–U3 indicate denial codes of F2–1520(c) and F1–1520(c), respectively, for the initial and reconsideration determinations of the state disability determination agency. (Tr. at 22, 24.) Denial codes F2–1520(c) and F1–1520(c) both represent denials at step two for lack of a severe impairment. SSA, Program Operations Manual System, DI 27015.095B.

"less than ordinary activity" due to congestive heart failure; and dizziness, headaches, and nose bleeds due to hypertension. *Id.* The Commissioner counters that substantial evidence supports the ALJ's finding that Plaintiff did not have any nonexertional limitations. (D.'s Br. at 8.)

■ *Bowling v. Shalala* articulates the proper standard in the Fifth Circuit for determining whether a hypothetical question is defective and, if so, whether the defective hypothetical question constitutes reversible error:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

*Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir.1994). Moreover, "failure to point out the problems in a defective hypothetical [does not] automatically salvage[ ] that hypothetical as a proper basis for a determination of non-disability." *Boyd v. Apfel,* 239 F.3d 698, 707 (5th Cir.2001).

In the instant case, the ALJ posed only two hypothetical questions to the VE. First, the ALJ asked what jobs an individual with Plaintiff's age, education, and lack of transferable skills could perform at the sedentary exertional level if that individual required a sit/stand option. (Tr. at 462–63.) Second, the ALJ asked what jobs an individual with Plaintiff's age, education, and lack of transferable skills could perform at the light exertional level if that individual were not able to bend or crawl.

*Id.* Because the alleged nonexertional limitations associated with the heart and hypertension impairments are not reflected in the medical evidence for the period of March 6, 1990, to March 6, 1992, the Court will only consider whether the ALJ erred by not incorporating the nonexertional limitations of "single eye vision" and illiteracy into his hypothetical questions.

With respect to "single eye vision," the ALJ specifically found that Plaintiff suffered from the severe impairment of "left eye blindness." (Tr. at 18.) However, despite recognizing this severe impairment, the ALJ failed to incorporate the "left eye blindness" into either of the hypothetical questions to the VE. (Tr. at 462–63.) The ALJ did not reasonably incorporate Plaintiff's recognized impairment of "left eye blindness" into the hypothetical questions, thereby rendering the hypothetical questions defective.

■ With respect to illiteracy, the ALJ did not expressly recognize illiteracy as one of Plaintiff's limitations. (Tr. at 18.) As such, the ALJ did not incorporate illiteracy into his hypothetical questions to the VE. (Tr. at 462–63). Although Plaintiff has consistently stated that he does not know how to read very well (Tr. at 440, 464), evidence of Plaintiff's illiteracy did not exist until approximately two weeks after the ALJ issued his unfavorable decision. (Tr. at 421.) The post-hearing evidence confirmed that Plaintiff "does not know all of his alphabet and knows only a few words." *Id.* Post-hearing evidence of a nonexertional limitation can be grounds to remand a case for consideration of the nonexertional limitation. *See Boyd,* 239 F.3d at 707–08 (remanding a social security case where "[t]he ALJ's hypothetical question did not incorporate many of the impairments or limitations described in ... post-hearing ... reports"). Therefore, the ALJ's omission of illiteracy from

his hypothetical questions, although not obviously defective at the time of the hearing, rendered his hypothetical questions defective upon the Appeals Council's receipt of evidence of Plaintiff's illiteracy.

Nonetheless, the ALJ's defective hypothetical questions only constitute reversible error if the ALJ based his unfavorable decision on the VE's answers to the defective hypothetical questions. *Bowling,* 36 F.3d at 436. In the instant case, there is no dispute that the ALJ based his unfavorable decision on the VE's answers to the defective hypothetical questions. In response to the second hypothetical question, the VE concluded that Plaintiff could perform the jobs of plumbing hardware assembler, marker, and hand presser. (Tr. at 463.) In his unfavorable decision, the ALJ expressly found that Plaintiff "could perform the jobs of hardware assembler, marker, and hand presser." (Tr. at 19.) Therefore, the ALJ stated that "[b]ased upon the testimony of the vocational expert, ... there are other jobs [Plaintiff] can perform." *Id.* Thus, the ALJ not only posed defective hypothetical questions to the VE, but he also based his unfavorable decision on the VE's answers to those defective hypothetical questions.

Because the ALJ's unfavorable decision was based on the VE's answers to defective hypothetical questions, substantial evidence does not support the ALJ's finding that Plaintiff was not disabled during the period of March 6, 1990 to March 6, 1992. Therefore, the case should be **REVERSED** and **REMANDED** for further administrative proceedings.

### F. Issue Four: Credibility Determination

Plaintiff contends that the ALJ improperly assessed his credibility. (P.'s Br. at 10.) Specifically, Plaintiff challenges the ALJ's consideration of Plaintiff's incarcer-

ation in the credibility decision, as well as the ALJ's reliance on a statement the ME did not make concerning Plaintiff's compliance with medications. *Id.* The Commissioner, on the other hand, asserts that substantial evidence supports the ALJ's credibility assessment. (D.'s Br. at 11.) In light of the Court's recommendation to remand the case on three other grounds, the Court need not reach the merits of the ALJ's credibility decision.

### G. Watson v. Barnhart

On April 8, 2002, the Fifth Circuit Court of Appeals issued a social security decision which directly applies to the facts of the instant case. In *Watson v. Barnhart,* 288 F.3d 212, 217–18 (5th Cir.2002), the Fifth Circuit held that the Commissioner must find that a physically-impaired claimant can both obtain and maintain employment before finding the claimant not disabled at step five of the sequential five-step disability inquiry. In the instant case, Plaintiff asserts only physical impairments, and the final decision of the Commissioner found Plaintiff not disabled at step five. Because the Commissioner did not make a finding that Plaintiff could both obtain and maintain employment, the Court notes that the Commissioner must make such a finding on remand before the Commissioner may find Plaintiff not disabled at step five.

### III. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the final decision of the Commissioner be **REVERSED** and that the case be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings. Specifically, the Commissioner should be instructed to: (1) reevaluate Plaintiff's alleged disability starting at step four of the sequential five-step disability inquiry for the period of March 6, 1990, to March 6,

1992;[5] and (2) evaluate Plaintiff's alleged disability starting at step two of the sequential five-step disability inquiry for the period after March 6, 1992, in accordance with the procedures provided in S.S.R. 83–21.[6]

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Perales v. Casillas,* 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79

F.3d 1415, 1428–29 (5th Cir.1996) (en banc).

July 7, 2003.

---

5. The parties do not dispute that steps one through three have been settled for the period of March 6, 1990, to March 6, 1992. Although Plaintiff challenges the competency of the ME, which could be construed to implicate the ME's step three testimony, Plaintiff's only contentions involve the ME's RFC testimony at step four. (P.'s Br. at 8–9.)

6. The ALJ specifically held that Plaintiff had not engaged in substantial gainful activity since March 6, 1990; therefore, step one has been settled for the period after March 6, 1992. (Tr. at 18.)