# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 1, 2008

Charles R. Fulbruge III
Clerk

No. 07-51176
Summary Calendar

LARRY WEIMER,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:06-CV-744

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Larry Weimer appeals the district court's decision upholding the Commissioner's denial of his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1382c(a)(3). For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## A.     Factual and Procedural Background

The record indicates that Weimer is a high school graduate with one year of post-secondary education.  He underwent treatment for a number of ailments beginning in April 1997, after he was involved in a vehicle collision which resulted in injuries to his right elbow and his cervical vertabrae.  Before the collision, Weimer was a school and commercial bus driver for a number of years.

Weimer's treating physician for his elbow injury was Dr. Carolyn M. Hyde, who treated Weimer from April 9, 1997 until January 27, 1999.  On January 28, 1998, Dr. Hyde completed a "Texas Rehabilitation Commission Vocational Rehab Division assessment of residual functioning capacity."  In the assessment, she concluded that Weimer: (1) had a grade III open complex interacticular fracture of the right distal humerus; (2) had the potential for arthritis and permanent weakness, as well as limited motion of the right elbow; (3) had a cervical spine fracture, which was treated by Dr. Matthew Hummell; (4) had incomplete flexion/extension of the right elbow and some limitation in neck motion, which might effect his ability to drive; (5) could perform standing and sitting up to seventy-five percent of the time; (6) could walk up to one mile; (7) could climb two flights of stairs; and (8) could bend limitedly.  In March 1998, Dr. Hyde's records showed that despite some moderate pain, there was significant improvement to Weimer's right elbow, as well as improvements in other areas.  Dr. Hyde indicated that Weimer was "relatively functional" and that he "seemed to be satisfied with the plan to retrain him for other work."  Dr. Hyde documented continued improvements in Weimer's elbow until his last visit in January 1999.  At that time, Dr. Hyde stated that he "is off work for any kind of manual labor until I see him back in three months.  It would be preferable that he complete his training in school and get a nonphysical and nonmanual job before I would release him to work."  This record reveals that this was the last

contact that Weimer had with a physician before seeking DIB and SSI on March 4, 2003.

In Weimer's applications for DIB and SSI, he alleged a disability onset date of April 1, 2001. He listed a neck injury, a right arm injury, ulcers, Charcot-Marie-Tooth disease, and a broken right collar bone as the illnesses, injuries, or conditions limiting his ability to work. According to Weimer, these impairments prevented him from climbing, riding a bicycle, or using a tractor trailer. In addition, he stated that his right arm could not lift more than twenty pounds nor move in a turning motion. He also stated that he could not drive and that his balance is off when he sits or squats. He indicated that the conditions first bothered him on April 6, 1997, and that he became unable to work because of these impairments on April 1, 2001. He noted that he worked intermittently with a "rehab agency" but completely stopped working due to the listed impairments on January 1, 2003. Weimer had an in-person interview with a Social Security representative in March 2003. In the report from this interview, the representative noted that Weimer stated repeatedly that he had not been to a doctor since 1999, including the emergency room.

On April 26, 2003, Weimer met with Dr. Jerrod Taylor for a consultive exam. Weimer discussed his medical history with Dr. Taylor, including his physical limitations as he saw them. Dr. Taylor concluded that Weimer's abdomen was normal and with no tenderness. He also noted that he had a normal gait and station, that he was able to stand on heels and toes and bend all the way over and return to standing upright without difficulty, that his motor strength was 5/5, and that his straight-leg raising was negative. On April 27, 2003, Weimer underwent an x-ray of his cervical spine; it revealed no evidence of fractures or subluxations, though it did show degenerative disc disease at the C4-C5 and C6-C7 levels. Dr. Taylor concluded that there was "no objective findings to suggest significant amount of functional impairment." He also stated

that Weimer could perform employment duties including sitting, standing, ambulating, and lifting objects less than twenty pounds.

Thereafter, a number of physicians reviewed Dr. Taylor's report and made independent findings. Dr. Howard D. Bronstein concluded that Weimer had no symptoms of an ulcer and noted that he was not on any ulcer medication.[1] Similarly, Dr. Richard J. Gross reviewed Dr. Taylor's report with regard to Weimer's complaints of ulcers and found no objective exam, x-ray, or endoscopic evidence to demonstrate ulcer disease. He noted the abdominal exam Dr. Taylor performed on Weimer was normal without any tenderness, and that Weimer had not received any physician treatment for his ulcers since the time period from 1997 to 1999. Dr. Avigdor I. Niv concluded that there was no objective evidence to support Weimer's contention of Charcot-Marie-Tooth disease. He also found no evidence of any musculoskeletal impairment to impact Weimer's ability to work. Dr. Reynaldo Salazar agreed that Weimer's allegation of Charcot-Marie-Tooth disease was not supported by the medical evidence available. Dr. Salazar also concluded that Weimer's allegations of neck and right arm tenderness were not fully supported by the medical evidence in the record or by an x-ray of the cervical spine.

Weimer's applications were denied. On July 9, 2003, he submitted a "Reconsideration Disability Report," explaining that his conditions had worsened. Weimer was denied reconsideration on August 11, 2003. Thereafter, during the time period of August 2003 through January 2004, he sought medical treatment at the Austin/Travis County Community Health Centers for his complaints of peptic ulcer disease, right arm pain, and knee pain. Weimer requested a hearing before an ALJ, which was conducted on May 12, 2004.

---

[1] The record is unclear as to whether Weimer took ulcer medication at any time from April 1997 though August 2003.

Before the ALJ, Weimer testified that he had broken his hand several times, which caused pain in cold weather. He indicated that he had broken his shoulder in a bicycle accident in 1976. He also stated that everyone in his family had Charcot-Marie-Tooth disease, and that the disease caused him to have leg cramps and a chest deformity. He testified that he was developing problems with his knees which prevented him from squatting; his ankles caused him pain; and he had gout in his feet. He testified that his neck injuries arose as a result of the accident in 1997. He stated that his ulcers caused vomiting as well as sensitivity to certain smells. In addition, Weimer testified that he could walk up to a half-mile and "sit fine." However, he stated that Dr. Hyde advised him not to lift more than twenty pounds, and that he could not do sideways repetitive motions because of his shoulder.

Donna Yeager, a vocational expert, testified before the ALJ regarding Weimer's past work experience and answered hypotheticals presented to her by the ALJ. Yeager testified that Weimer's past work as a bus driver would be classified as semi-skilled and medium in exertional demands. The ALJ then asked Yeager to consider, hypothetically, whether there is work available for an individual who possesses the strength to perform a wide range of light work, but could not perform repetitive reaching or rotation of the right arm, or rotate his head from right to left more than 1/3 of the work day, and with the ability to perform only one or two step tasks. Yeager testified that although such an individual would be precluded from work as a bus driver, he could work as a counter clerk, a cashier II, or an investigator of dealer accounts. She testified that a substantial number of jobs in each field existed nationally and in Texas.

The ALJ found that Weimer was not entitled to DIB or SSI, based on her conclusion that there were significant jobs in the national economy as well as in Texas that Weimer could perform. The Appeals Council denied Weimer's

request for review. The district court affirmed the decision of the ALJ. Weimer timely appeals.

## B.    Discussion

On appeal, Weimer argues the following: (1) the ALJ failed to properly consider the opinion of his treating physicians; (2) the ALJ failed to take into account certain impairments in determining his residual functioning capacity; and (3) the ALJ failed to make a determination regarding whether he could sustain employment.

Under the Social Security Act, 42 U.S.C. § 405(g), this Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the final decision, and whether the proper legal standards were used to evaluate the evidence. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002). Where the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a conclusion." Randall v. Sullivan, 956 F.2d 105, 109 (5th Cir. 1992). While we must scrutinize the record to determine the reasonableness of the decision reached by the ALJ, we must not reweigh the evidence, try the issues de novo, or substitute our judgment for that of the ALJ's. Id.

To evaluate a claim of disability, the ALJ conducts the following five-step sequential inquiry: (1) if a claimant is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings, 20 C.F.R § 404.1520(b); (2) a claimant who does not have a "severe impairment" will not be found to be disabled, 20 C.F.R § 404.1520(c); (3) a claimant who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors, 20 C.F.R § 404.1520(d); (4) if a claimant can still perform his past work, he is not disabled,

20 C.F.R § 404.1520(e); and (5) if a claimant's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed, 20 C.F.R. § 404.1520(f). In evaluating Weimer's claim under this five-step inquiry the ALJ determined that steps one through four were met. However, the ALJ determined that based on a review of "all of the medical opinions in the record regarding the severity of claimant's impairment," Weimer had residual functional capacity sufficient "to perform a wide range of light work."

Weimer first contends that the ALJ failed to properly consider the opinion of his treating physician. We disagree. This Court has consistently acknowledged that the opinion of the treating physician is entitled to great weight. See 20 C.F.R. § 404.1527(d)(2); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). Here, the ALJ not only summarized the medical evidence contained in Dr. Hyde's reports, but she also specifically indicated that her residual functional capacity assessment was based on the opinion of Dr. Hyde. In particular, the ALJ determined that:

> [Weimer can] occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. The claimant should avoid repetitive reaching and rotation of right arm with limited rotation of the head. The claimant has the ability to perform simple, unskilled 1-2 step repetitive tasks. This opinion is based on the opinion of Dr. Hyde.

This finding is consistent with Dr. Hyde's January 1999 assessment, which was the last time Dr. Hyde met with Weimer regarding his ability to work. Because the ALJ's determination of Weimer's residual functioning capacity relied heavily on the opinion of his treating physician, Weimer's contention that the ALJ failed to accord proper weight to Dr. Hyde's opinion is without merit.

Second, Weimer asserts that the ALJ failed to consider certain impairments identified by his treating physicians, specifically Dr. Hyde. Contrary to Weimer's assertion, the ALJ's decision specifically discussed Dr. Hyde's reports and, as noted above, the ALJ stated that her determination of Weimer's residual functional capacity was based on the opinion of Dr. Hyde. In support of his position, Weimer also directs this Court's attention to a few brief, generally illegible notations in the hundreds of pages of medical documentation contained in the record. This evidence shows that Weimer sought treatment from the Austin/Travis County Community Health Center for complaints of peptic ulcers, right arm pain, and knee pain during the period from August 2003 to January 2004. According to Weimer, these notations support his contention that he suffers from ulcers, arthritis, and knee and hand impairments.

The ALJ acknowledged that Weimer may experience some pain, but concluded that the severity was not as great as Weimer had testified and that his allegations of Charcot-Marie-Tooth disease and ulcers were not supported by the totality of the medical evidence. See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001) (noting that "[s]ubjective complaints of pain must also be corroborated by objective medical evidence"). Our review of the record reveals that substantial evidence supports the ALJ's decision. Weimer did not present any evidence to substantiate his claim that he has Charcot-Marie-Tooth disease. Dr. Taylor's findings do not support Weimer's allegations of ulcers, and after a physical examination of Weimer, he also concluded that there were "no objective findings to suggest a significant amount of functional impairment. His ability to perform employment duties that would include sitting, standing, ambulating, and the lifting of objects less than twenty pounds appears to be grossly intact. His cognition and motor skills are also normal." These conclusions are also consistent with Dr. Hyde's opinion. Accordingly, based on this record, we cannot conclude that the ALJ's determination was unreasonable.

Weimer next contends that because the ALJ erred in determining his residual functional capacity, the ALJ's finding that there are jobs in the national economy that he could perform is also improper. Because we have already determined that the ALJ's finding regarding Weimer's residual functional capacity is supported by substantial evidence, this Court need only determine whether the ALJ properly determined that there are jobs in the national economy that Weimer can perform. We conclude that she did. In the present case, the ALJ's finding that Weimer could perform jobs in the national economy was based on a hypothetical question presented to a vocational expert. This Court has created a two-part test for determining whether an ALJ's hypothetical question constitutes reversible error: first, the question must include all disabilities of the claimant recognized by the ALJ; and second, the claimant or his representative should be allowed to correct deficiencies in the ALJ's question. Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994). Here, we need not reach the second prong of this test because we find that the hypothetical question posed by the ALJ reasonably incorporates the disabilities recognized by the ALJ.[2] Specifically, the ALJ determined that Weimer could perform light work, which involves lifting no more than 20 pounds at a time and frequent carrying of objects weighing up to 10 pounds; he should avoid repetitive reaching and rotation of the right arm with limited rotation of the head; and he has the ability to perform simple, unskilled, one or two step repetitive acts. The hypothetical questions included each of these factors.[3] Cf. Morris v. Bowen, 864 F.2d 333, 336

---

[2] However, it should be noted that Weimer's representative was present when the ALJ questioned Yeager, but did not attempt to correct any perceived deficiencies in the ALJ's hypothetical questions. Weimer himself was also present.

[3] Specifically, the ALJ asked Yeager the following question:
> The first hypothetical I want you to consider assumes the strength to perform a wide range of light work. However, there would be, with respect to the right arm, no repetitive reaching or rotation of the right arm. In addition, the hypothetical

(5th Cir. 1988) (holding that hypothetical question was "too abstract to reflect [the claimant's] particular disabilities"). Accordingly, the ALJ properly concluded that there are jobs in the national economy that Weimer can perform.

Finally, Weimer asserts that the ALJ erred by failing to address whether he is capable of sustained employment. This Court has previously acknowledged that "in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of a sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." Frank v. Barnhart, 326 F.3d 618, 619 (5th Cir. 2003). The Court has also noted that "[u]sually the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." Id. Only in rare circumstances is an ALJ required to make a separate determination regarding whether a claimant is able to maintain employment. See id. (citing Watson v. Barnhart, 288 F.3d 212 (5th Cir.2002)). This is not such a case. Accordingly, we hold that the ALJ's finding regarding Weimer's residual functional capacity also included a determination that he could in fact maintain employment.

## C.   CONCLUSION

For the foregoing reasons, we AFFIRM the ruling of the district court.

---

individual would, with respect to rotation of the head, would perform no, no more than occasional or up to 1/3 of the day of rotating the head to the right and the left. In other words, the plaintiff would visually affix on a, an object in front of the workstation and not laterally. . . . And finally the hypothetical individual would perform one or two step repetitive tasks to address a possible non-exertional impairment that we might find out about later. Given these limitations, would any past work be available.