**Shirley RANDALL, Plaintiff-Appellee,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant-Appellant.**

No. 91–3451.

United States Court of Appeals, Fifth Circuit.

March 19, 1992.

Rodney A. Johnson, Asst. Reg. Cnsl., DHHS Office of Gen. Cnsl., Dallas, Tex., Glenn K. Schreiber, Asst. U.S. Atty., Harry Rosenberg, U.S. Atty., New Orleans, La., for defendant-appellant.

Bryan Stephen Pedeaux, Stricks & Associates, New Orleans, La., for plaintiff-appellee.

Before REAVLEY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Shirley Randall applied to the Secretary of Health and Human Services for benefits under 42 U.S.C. section 423(d), claiming disability due to back and neck injuries. The Secretary denied her claim, and she appealed to the district court. The district court adopted the magistrate's finding that there was no substantial evidence of record to support the Secretary's decision to deny benefits, and remanded the case back to the Secretary for a rehearing.

## I. FACTUAL BACKGROUND

### A. *Procedural History*

 Shirley Randall applied to the Secretary of Health and Human Services (the Secretary) for disability insurance benefits under 42 U.S.C. section 423(d) on September 1, 1983, claiming disability due to back and neck injuries she allegedly sustained while in the course of her employment. After a hearing, an administrative law judge (ALJ) issued a decision that Mrs. Randall was not disabled, and she sought review from the appeals council. After the appeals council denied Mrs. Randall's request for review, she filed suit in the District Court for the Eastern District of Louisiana. The district court remanded Mrs. Randall's claim back to the Secretary because the hearing tape was inaudible. After remand, a second administrative hearing was held on March 26, 1986, at which the ALJ issued a recommended decision that Mrs. Randall was not disabled. The appeals council adopted the recommended decision of the ALJ on June 30, 1986, and Mrs. Randall filed suit in district court seeking judicial review of that decision. The magistrate remanded Mrs. Randall's case back to the Secretary in order for him to obtain vocational expert testimony. A supplemental hearing was held before an ALJ on December 2, 1988, at which a vocational expert testified. After the hearing, the ALJ issued a recommended decision, which the appeals council adopted, finding that Mrs. Randall was not disabled because she could perform sedentary work that existed in significant numbers in the region in which she resided. Mrs. Randall filed suit in district court seeking review of that decision. On March 19, 1991, the district judge adopted the magistrate's opinion that again remanded the case back to the Secretary. The remand was issued because the judge concluded that there was not substantial evidence to support the ALJ's finding that

Mrs. Randall was not disabled.[1] The Secretary appeals this remand order.

### B. *Medical History*

Mrs. Randall has a lengthy medical history dating from 1980 until present. A summary of that history is appropriate because of the fact intensive nature of our review. In February of 1980, Mrs. Randall fell down some stairs at work and injured her back and neck. After several months of treatment, she underwent a discectomy and laminectomy performed by Dr. Gessner.

In November of 1980, Mrs. Randall was examined by Dr. Battalora, who determined that she had limited back motion and was in need of continued orthopedic treatment.

In September of 1981, Mrs. Randall was admitted to Hotel Dieu Hospital under the care of Dr. Gessner. After a year of administering treatment, the doctor opined that she was not fit for duty regarding her lower back.

Mrs. Randall saw Dr. Applebaum, a neurosurgeon, in May of 1982. He found no evidence of disease or damage to the spinal cord or nerve roots, and saw no neurological reason why she could not return to work. He noted, however, that because of her persistent back pain an orthopedic re-evaluation was recommended.

In August of 1982, Mrs. Randall was examined by Dr. Kewalramani. He found that she was suffering from lumbar myofascial pain syndrome and cervical myofascial pain, and that she had hypesthesia in her lower left extremities. He recommended that she avoid lifting, pushing, and pulling activities with weight exceeding 20–25 pounds.

Mrs. Randall visited Dr. Benson in November of 1982. He opined that she had R/O neuropathy in the upper extremity, R/O cervical radiculopathy, and R/O recurrent lumbar radicular involvement. He

---

1. The magistrate's recommendations, which the district court adopted, determined that it was improper for the ALJ to render an opinion as to the residual capacity of Mrs. Randall because a plaintiff's residual capacity is to be properly determined by a vocational expert. We disap-

prove of that determination, because clearly it is the ALJ's responsibility to assess and determine a plaintiff's residual function capacity. 20 C.F.R. sec. 404.1546 (1991); *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir.1985).

recommended that she begin treatment at St. Charles Hospital three times a week, and that an EMG be performed on her.

In December of 1982, Mrs. Randall underwent surgery for a biopsy on her right breast. The biopsy revealed a fibroadenoma of the right breast.

In February of 1983, Dr. Benson conducted an EMG on Mrs. Randall that revealed findings of bilateral radiculopathy involving the anterior and posterior primary divisions of C7 on the left and the posterior primary division of C6 on the right. Three days after administering the EMG, Dr. Benson performed a CT scan on Mrs. Randall that revealed degenerative changes, spinal stenosis, and probable disc herniation at the C6–C7 level.

In April of 1983, Mrs. Randall visited Dr. Jackson who reviewed her CT scan and EMG reports, and conducted a neurological examination. He suggested removal of the C6–C7 disc and an anterior cervical fusion for relief of her pain. However, Dr. Jackson did not see any evidence of a disc bulge at the C6 level.

In March of 1983, Dr. Richardson examined Mrs. Randall and found that she had full rotation in her cervical spine, minimal evidence of nerve root irritation, and a negative lumbar spine examination. He did not feel that surgery was appropriate at that time, but recommended admission to a pain clinic.

Mrs. Randall was admitted to the pain clinic at the Hotel Dieu Hospital in April of 1983. She made little or no effort to improve while at the hospital, and it was the attending physician's impression that she had passive dependant personality, with minimal organic illness and maximum emotional problems.

In October of 1983, Mrs. Randall visited Dr. Diodene who performed a physical examination on her and took x-rays. The examination revealed degenerative disc disease in the cervical spine region, and the doctor determined, in his opinion, that Mrs. Randall was disabled and that she should refrain from doing any type of repetitive bending, heavy lifting, or overhead work.

In November of 1983, Mrs. Randall was examined by Dr. Levy who performed a neurological examination on her and took x-rays. The neurological examination revealed no objective mechanical signs in the neck or lower back, and he found that there was no residual evidence of spinal cord or nerve root injury or disease in the cervical or lumbar regions. The doctor opined that Mrs. Randall had a 5–10% permanent anatomical disability of the body attributable to her surgery in June of 1980, but he saw no reason why she could not return to work from a functional standpoint.

In January of 1984, Mrs. Randall was examined by Dr. Nutik who reviewed her medical records, took x-rays of her cervical spine, and conducted a neurological examination. The doctor found that Mrs. Randall had early degenerative disc disease of the cervical spine at the C4–C5, C5–C6, and C6–C7 levels, but that the neurological examination did not reveal any irritation of the cervical nerve roots. He noted that Mrs. Randall had residual disability of the lower back region resulting from a lumbar laminectomy, and opined that she would be restricted from doing any heavy lifting, climbing, or excessive stooping.

Mrs. Randall continued to visit Dr. Benson on a regular basis from 1984–1986. The doctor treated her with heat, massage, traction, transcutaneous nerve stimulation, and dry therapy; all of which proved to be only mildly successful. In March of 1986, Dr. Benson found that Mrs. Randall was disabled with regard to heavy or light manual labor, noting that she had been disabled since the time of her injury.

In January of 1987, Dr. Jackson diagnosed Mrs. Randall as having Brown–Sequard Syndrome, and performed an anterior cervical discectomy with decompression of the spinal cord and nerve root at the C4–C5, C5–C6, and C6–C7 levels. After surgery, Mrs. Randall continued to be examined by Dr. Benson with continued complaints of pain until August of 1988. She also followed up her surgery with three visits to Dr. Jackson. At each visit she complained of continuing pain.

In July of 1988, Dr. Hosma performed surgery on Mrs. Randall's left wrist because she suffered from DeQuervain's tendinitis with superficial radial nerve neuritis.

In December of 1988, Mrs. Randall visited Dr. Williams who conducted both a physical and x-ray examination. The doctor discovered evidence of degenerative disc disease, failed fusion between the bodies of the 4th, 5th, 6th, and 7th cervical vertebras, and restricted motion in her neck and lower back. Based on those findings, the doctor determined that Mrs. Randall would be limited in her ability to work.

## II. ANALYSIS

### A. Standard of Review

Our decision on appeal is limited to the question of whether there is "substantial evidence" of record to support the Secretary's decision to deny Mrs. Randall benefits. Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). On review, we can not reweigh the evidence, try the issues de novo, or substitute our judgement for that of the Secretary. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir.1985). However, despite our limited function, it is imperative that we scrutinize the record in its entirety to determine the reasonableness of the decision reached by the Secretary and whether substantial evidence exists to support it. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir.1983); *Anderson v. Schweiker*, 651 F.2d 306, 308 (5th Cir.1981).

### B. Improper Medical Records

In determining disability, the ALJ follows a five-step "sequential evaluation" process that is laid out in the regulations. 20 C.F.R. sec. 404.1520 (1991). In this case, Mrs. Randall was denied benefits at the fifth step of the process, when the ALJ determined that she could perform other work in the national economy despite her disability. In making that determination, the ALJ based his opinion in part on a 1983 medical report of an EMG test that the ALJ classified as the "only truly objective test." That report states "[s]uch findings do not show severe damage to the nerves." The problem with the report is that it is based on an EMG study of another person, which was supposed to have been removed from the record in 1986. The report that actually refers to Mrs. Randall suggest bilateral radiculopathy.

The ALJ's significant reliance upon an incorrect test result would render the finding of no disability unsupported by substantial evidence. The Secretary's assertion that the ALJ did not actually rely on the wrong test is belied by the emphasis on the results of this particular test in the ALJ's opinion. It is clear from the opinion, which is the only insight we have into the ALJ's decisionmaking process, that the EMG test result was a major factor in the determination of no disability.

## III. DECISION

In light of the Secretary's mistaken reliance on the improper medical report and in light of our review of Mrs. Randall's extensive medical record, we hold that there is not substantial evidence to support the Secretary's decision that Mrs. Randall is not disabled. Because of the medical record, we think it unconscionable to remand this eight year old case to the Secretary for further review. Accordingly, we remand this case with instructions to remand to the Secretary, and order him to award Mrs. Randall the benefits she would have otherwise been entitled to but for the determination by the ALJ that she could perform other work in the national economy despite her disability. *Deters v. Secretary of Health and Human Services*, 789 F.2d 1181, 1186 (5th Cir.1986); *Emory v. Sullivan*, 936 F.2d 1092, 1095–96 (10th Cir. 1991).

MODIFIED AND REMANDED.