DECISION AFTER REMAND
This case returns to this Court after remand. In its March 13, 2001 amended decision after remand, the Rhode Island Department of Human Services (DHS), denied John David's application for Medical Assistance (MA) benefits. The plaintiff seeks reversal of the DHS decision denying his MA benefits and an order for the prompt payment of benefits.
 FACTS/TRAVEL
On October 1, 1999, the plaintiff, a fifty-year-old-male with a more than a twenty year work history, applied for MA benefits due to Chronic Fatigue Syndrome (CFS).[1] As part of his application, plaintiff submitted an AP-70 form; Information for Determination of Disability. In this form, the plaintiff stated that he had CFS. The plaintiff included a list of twenty-six symptoms including, but not limited to, prolonged fatigue, swollen and painful lymph nodes, muscle weakness, forgetfulness, and balancing problems. See AP-70. The plaintiff acknowledged that he was able to cook, do dishes, vacuum, dust, make the beds, and do the laundry. Id. The plaintiff also stated that he did not need personal help getting places.
The plaintiff also submitted two MA-63 Physician's Examination Reports. One report was prepared by Dr. Moran, plaintiff's primary care physician, and another by Dr. Clough. The MA-63 completed by Dr. Moran on October 7, 1999, indicated that the plaintiff's functional limitations during an eight-hour period were sitting for eight hours, walking and standing for two hours, reaching for two hours, and carrying up to twenty-five pounds for two hours. See MA-63. Dr. Moran also placed moderate limitations on the plaintiff's ability to remember and carry out simple instructions and his ability to maintain attention and concentration in order to complete tasks in a timely manner. Although the plaintiff's overall prognosis was good, he was diagnosed with "? chronic fatigue/viral syndrome, labile hypertension, and generalized anxiety." (Amended 5B1-5B4.) Subsequently, Dr. Moran referred the plaintiff to Dr. Clough for a CFS evaluation.
On November 9, 1999, the plaintiff was examined by Dr. Clough. On the MA-63 completed by Dr. Clough, she noted that the plaintiff appeared fatigued and had a moveable one centimeter node behind his left jaw. She also indicated that the plaintiff's tandem gait was very poor and that he had a marked lymphadenopathy in his neck. The plaintiff's functional limitations during an eight-hour period included walking or standing for less than one hour and sitting for one hour, lifting ten to twenty pounds occasionally, and not being able to bend. All of the plaintiff's work-related mental abilities were described as either "markedly limited" or "moderately limited." (Amended 5E3.) Other ophthalmological and thyroid tests appeared normal.
Based upon Dr. Clough's examination, the plaintiff's prognosis was poor, and he was diagnosed with CFS and chronic bronchitis. Subsequently, further laboratory tests were conducted by Dr. Moran on December 16, 1999, indicating the plaintiff suffered from Epstein-Barr Virus (EBV).[2]
(Amended 8.) Further examinations were recommended but were not covered by plaintiff's medical coverage.
On October 18, 1999, the plaintiff received a denial notice from the Medical Assistance Review Team (MART). The MART determined that there was no "objective evidence" that the plaintiff was totally disabled and that he was capable of performing "light work." See AP-65. The plaintiff appealed and appeared pro se at the administrative hearing on December 8, 1999. However, the administrative hearing record remained open until January 10, 2000, to allow the plaintiff more time to forward the additional MA-63 form and laboratory results for consideration by the DHS Appeals Officer. On January 5, 2000, MART conducted a post-hearing review of the medical evidence submitted by the plaintiff. The MART found "all lab unremarkable" and that the plaintiff was capable of "light work." (Amended 8.)
On February 3, 2000, DHS issued a decision finding the plaintiff ineligible, concluding there was "no objective medical evidence in the record to support a finding of severe impairment," the laboratory work was "unremarkable," and the plaintiff was capable of performing "light work." (Amended 9 at 7.)
On January 24, 2001, this Court vacated the DHS decision and remanded the case for reevaluation.
This Court determined that MART and the Appeals Officer erred for failing to consider:
 "the abnormal laboratory results indicating EBV in conjunction with the plaintiff's CFS diagnosis, which according to the Social Security Administration Ruling 99-2p establishes a `medically determinable impairment.'" (Opinion at 9).
Consistent with this Court's January 24, 2001 opinion, DHS was to reevaluate eligibility according to the applicable Social Security Administration guidelines, in particular, Social Security Ruling (SSR) 99-2p. On March 13, 2001, DHS denied the plaintiff's claim for MA benefits. The plaintiff contends that DHS failed, once again, to consider the abnormal lab results and SSR 99-2p. The DHS responds relying solely on its written decision.
 Standard of Review
The Court's review of a decision of the Department of Human Services is controlled by G.L. 1956 § 42-35-15(g), which provides for review of a contested agency decision:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 1) In violation of constitutional or statutory provisions;
 2) In excess of the statutory authority of the agency;
 3) Made upon unlawful procedure;
 4) Affected by other error of law;
 5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307 (R.I. 1988). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. R.I. Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981).
However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. R.I. Public Telecommunications Authority v. R.I. Labor Relations Board, 650 A.2d 479, 485 (R.I. 1994).
 Medically Determinable Impairment
When specifically evaluating laboratory results and their relationship to CFS, the Social Security Administration ruled that:
 "the following laboratory findings establish the existence of a medically determinable impairment in individuals with CFS:
 An elevated antibody titer to Epstein — Barr virus (EBV) capsid antigen equal to or greater than 1:5120, or early antigen equal to or greater than 1:640."
Evaluating Cases Involving Chronic Fatigue Syndrome, 64 Fed.Reg. 83, 23382 (1999) (emphasis added). Furthermore, laboratory results are defined as a form of "objective medical evidence" by20 C.F.R. § 416.928 (b) and (c). Thus, according to the SSA, laboratory results indicating the existence of EBV in conjunction with a diagnosis of CFS establish a "medically determinable impairment" through the use of "objective medical evidence."
In the DHS decision on remand, the Appeals Officer states that:
 "Although reexamination of the record has caused this Appeals Officer, in light of SSR 99-2p. to conclude that the appellant may have a medically determinable condition, I cannot reach a definitive conclusion of an existing medical impairment." (Decision on Remand p. 10).
This finding completely ignores the explicit language of SSR 99-2p. which states that an individual diagnosed with CFS and who has laboratory results indicating EBV establishes a "medically determinable impairment." In the instant matter, the plaintiff was diagnosed with CFS by Dr. Moran and Dr. Clough and has symptoms consistent with the symptomology for CFS. The laboratory tests conducted by Dr. Moran on December 16, 1999, indicated that the plaintiff suffered from Epstein-Barr Virus (EBV). Furthermore, the DHS Appeals Officer acknowledged that "upon reexamination . . . the appellant has elevated cholesterol readings as well as Epstein-Barr Virus Serology which is elevated to a level which suggests an active infection." (Decision on Remand p. 10). Once again, the Appeals Officer failing to find that the plaintiff has a "medically determinable impairment" was clearly erroneous. See SSR 99-2p. This error adversely affected the rest of the analysis.
Since the plaintiff has a "medically determinable impairment," the next step in this sequential evaluation process is that the adjudicator (DHS)
 "must consider that the individual has an impairment that could reasonably be expected to produce the individual's symptoms associated with CFS., as required in 20 C.F.R. § 404.1529(b) and 416.929(b), and proceed to evaluate the intensity and persistence of the symptoms. Thus, if an adjudicator concludes that an individual has a a medically determinable impairment, and the individual alleges . . . symptoms consistent with CFS, these symptoms must be considered in deciding whether the individual's impairment is `severe.'" (Emphasis added.)
Many of the plaintiff's symptoms were within the parameters of the current CDC definition of CFS, including painful lymph nodes, short-term memory problems, visual disturbances, headaches, and prolonged fatigue. See AP-70 and SSR 99-2p. However, the Appeals Officer went on to find that "[t]he majority of the appellant's reported symptoms are undocumented. . . and therefore cannot be evaluated as to severity in regard to the effect on his physical activities." (Emphasis added.) Thus, the Appeals Officer's failing to consider the plaintiff's symptoms in determining whether the individual's impairment was severe was arbitrary and in violation of SSR 99-2p. which requires symptoms consistent with CFS to be considered.[3]
 Severity of Impairment
Social Security Ruling 99-2p. requires a finding of "severe" impairment when "symptoms are found to cause a limitation or restriction having more than a minimal effect on an individual's ability to perform basic work activities." According to the record, the plaintiff's work-related mental abilities were described by Dr. Clough as either "markedly limited" or "moderately limited." (Amended 5E3.)
Dr. Moran also placed moderate limitations on the plaintiff's ability to remember and carry out simple instructions and his ability to maintain attention and concentration in order to complete tasks in a timely manner. These documented limitations along with the Dr. Moran and Dr. Clough's diagnosis of chronic fatigue syndrome, the plaintiff's twenty-six listed symptoms mostly associated with CFS, and laboratory findings of EBV, indicate a more than minimal effect on the plaintiff's ability to perform basic work activities. Thus, the Appeals Officer's finding that the plaintiff's medically determinable impairment was not severe was clearly erroneous in light of SSR 99-2p.
Since there was no finding as to the severity of the medically determinable impairment by the Appeals Officer, the duration of the impairment was never determined. According to the record, the plaintiff had to stop working due to CFS in September of 1999. This suggests onset of CFS occurred less than twelve months prior to adjudication. In those instances, the "adjudicator [DHS] must evaluate the medical evidence and project a degree of impairment severity that is likely to exist at the end of twelve months." See SSR 99-2p. The Appeals Officer's failing to determine the projected impairment severity at the end of twelve months was arbitrary and in violation of SSR 99-2p.
 Residual Functional Capacity
In so much as CFS is not a listed impairment in appendix 1, subpart P of 20 C.F.R. § 404, an assessment of Residual Functional Capacity (RFC) must be made. In assessing RFC "all of the individual's symptoms must be considered in deciding how such symptoms may affect functional capacity." See SSR 99-2p. Once again, the Appeals Officer failed to consider the plaintiff's symptoms in determining the RFC and determined the plaintiff could do "light work." (Decision on Remand at 11).
The term "light work" is defined by 20 C.F.R. § 416.967(b) which states:
 "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing or when it involves sitting most of the time with some pushing and pulling of the leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."
This requires the ability to stand or walk, off and on, for a total of about six hours out of eight; the ability to lift up to twenty pounds for one-third of the workday; and the ability to lift up to ten pounds up to two-thirds of an eight hour work day. Social Security Ruling 83-10 (interpreting § 416.946(b)).
The Appeals Officer's determination that the plaintiff could perform "light work" is not supported by substantial evidence in the record. Specifically, Dr. Moran's report finds that the plaintiff can stand and walk for only two out of eight hours, can only carry weight occasionally during the day, and can stand and sit intermittently for four hours with breaks. Dr. Clough restricts the plaintiff in all activities to less than one hour for walking and standing, no bending, and one hour for sitting and reaching. Additionally, Dr. Clough limited the plaintiff's carrying to five pounds for an hour and occasionally lifting ten pounds. Thus, the Appeals Officer's finding that the plaintiff was capable of "light work" was clearly erroneous.
 Conclusion
In light of the foregoing, the Appeals Officer's decision to deny the plaintiff disability benefits is unsupported by substantial evidence in the record. See Thaete v. Shalala, 826 F. Supp. 1250 (D.Colo 1993) (reversing and remanding for an award of benefits after ALJ refused to properly consider the claimant's diagnosis of "chronic fatigue syndrome," claiming that it was not based on "significant medical findings"); Cohen v. Secretary, 964 F.2d 524 (6th Cir. 1993) (reversing and remanding for an award of benefits after ALJ refused to give proper consideration to claimant's diagnosis of chronic fatigue syndrome). Furthermore, it is the opinion of this Court that another remand to DHS would further and simply delay the receipt of benefits by the plaintiff. See Randall v. Sullivan,956 F.2d 105 (5th Cir. 1992) (the mistaken reliance on medical reports and in light of the claimant's extensive medical record the court found it unconscionable to remand the case for further review and awarded social security disability benefits).
After reviewing the entire record, this Court finds that the substantial rights of the plaintiff have been prejudiced because the DHS findings were clearly erroneous, arbitrary, and in violation of the statutory provisions of the Social Security Act. Accordingly, the DHS decision is reversed, and this matter is remanded for the award of benefits consistent with this opinion. Counsel shall submit the appropriate order for entry.
[1] The plaintiff indicated on the AP-70 form that he last worked as a car salesman, but prior to that he worked in manufacturing for over twenty years.
[2] All the plaintiff's clinical immunology results were outside the normal ranges and were listed on the report as either critical/abnormal or indicative of infection. Specifically, the EBV serology indicates infection.
[3] SSR 99-2p. requires the plaintiff's symptoms to be considered if they are consistent with the symptoms for CFS. This requirement is not based upon whether or not the symptoms are documented.