IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 27, 2007

Charles R. Fulbruge III
Clerk

No. 07-30344
Summary Calendar

SHEILA D HOLMES BULLOCK,

Plaintiff-Appellant,

v.

MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
2:06-CV-1792

Before HIGGINBOTHAM, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Sheila D. Holmes Bullock seeks review of the district court's grant of summary judgment to the Commissioner of the Social Security Administration, affirming the Commissioner's denial of disability insurance under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, as well as the Commissioner's denial of supplemental security income under Title XVI of the Act, 42 U.S.C. § 1382(a)(3). For the following reasons, we AFFIRM the judgment of the district court.

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I. Factual and Procedural History

The record indicates that Bullock has a history of pain in both knees dating back to October 2002, at which time she was working as a nursing assistant. On October 25, 2002, she was seen by Dr. Keith Barbagelott, an orthopedist at Ochsner Clinic, for pain in her left knee and was diagnosed with early degenerative joint disease and a Baker's cyst. On January 30, 2003, Bullock returned to Dr. Barbagelott with reports of pain in her right knee and was diagnosed with mild degenerative joint disease and an associated Baker cyst. At that time, the doctor noted that Bullock was involved in patient care, did a lot of heavy lifting, stood all day, and was slightly overweight. Dr. Barbagelott indicated that because of these factors there was a lot of stress on her knees, which interfered with her job. She was given an injection in her right knee with the recommendation that she take an anti-inflammatory medication.

On August 5, 2003, she was diagnosed by Dr. Barbagelott with degenerative joint disease of the right knee and a large symptomatic popliteal cyst. On August 14, 2003, Bullock was seen by Dr. Mark Meyer, an orthopedic surgeon at Ochsner, for complaints of pain in her right knee and swelling. An MRI revealed a significant popliteal cyst and degenerative changes in the posterior horn of the medial meniscus. Dr. Meyer explained to her that Ochsner did not do surgical excisions in these situations because the recurrence rate was so high and recommended aspiration and an injection.

On August 25, 2003, Bullock sought a second opinion from Dr. Charles Johnson based on the severe pain she was experiencing in her right knee. On September 12, 2003, Dr. Johnson performed arthroscopic surgery on her right knee with partial medial meniscectomy. Following surgery, Bullock experienced significant improvement; she had good range of motion in her knee. Thereafter, Dr. Johnson treated her for a massive effusion on her right knee. Dr. Johnson drained the fluid from her knee and recommended that she not return to work

until further notice. Bullock stopped working on January 6, 2004 after the pain in her knee became worse. She lost her health benefits as a result.

On March 17, 2004, Bullock went to the emergency room at Charity Hospital with complaints of severe pain in her right knee and she scheduled to see an orthopedist. The orthopedist found limited range of motion of the knee and that flexion was painful. Bullock was diagnosed with osteoarthritis and prescribed a cane to assist with ambulation.

On June 9, 2004, Bullock returned to Dr. Meyer; he conducted x-rays on her right knee and diagnosed her with moderate to advanced arthritis. After a subsequent examination on October 11, 2004, Dr. Meyer diagnosed her with advanced osteoathritis and recommended knee replacement. On April 11, 2005, Dr. Meyer completed a narrative report, describing her condition as "effectively 'bone on bone' in the medial compartment of the right knee." Further he stated that he believed that it might be difficult for Bullock to walk one block, particularly on rough or uneven surfaces, and that she may have difficulty climbing stairs.

On January 5, 2004, Bullock submitted an application for social security benefits, reporting that she had become unable to work on September 12, 2003 due to advanced osteoarthritis in her right knee, high cholesterol, high blood pressure, panic attacks, and sleep disorders. Her application for benefits was denied. Bullock filed a request for hearing and on March 31, 2005, a hearing was held before the Administrative Law Judge ("ALJ"). During the hearing the ALJ indicated that he was not persuaded that Bullock met the requirements to be considered disabled under the Listing of Impairments; the ALJ determined that Bullock should be scene by another orthopedist.

On May 24, 2005, Bullock was examined by Dr. Donald Faust, an orthopedic surgeon, as per the request of the ALJ. Dr. Faust found that Bullock was active and independent and able to care for herself. She would have

problems with prolonged walking or standing, but could perform sedentary type activities.

On November, 21, 2005, the ALJ issued a written opinion denying Bullock's application. Thereafter, the Appeals Council denied Bullock's petition for review. Bullock appealed to the district court. On January 31, 2007, the district court issued a ruling adopting the report and recommendation of the magistrate judge, granting summary judgment to the Commissioner. From that judgment, Bullock filed a timely appeal to this Court.

## II. Discussion

Bullock raises two issues on appeal. First, she claims that the ALJ erred in finding that she did not have an impairment under the Listing of Impairments. Second, Bullock contends that the ALJ improperly failed to consider the medical opinion of her treating physician.

Like the district court, this Court's review of the Commissioner's denial of disability benefits is limited to determining whether: (1) substantial evidence supports the final decision; and (2) the proper legal standards were used to evaluate the evidence. Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005). Where the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a conclusion." Randall v. Sullivan, 956 F.2d 105, 109 (5th Cir. 1992). While we must scrutinize the record to determine the reasonableness of the decision reached by the ALJ, we must not reweigh the evidence, try the issues de novo, or substitute our judgment for that of the ALJ's. Id.

In evaluating a claim of disability, the ALJ conducts a five-step sequential inquiry consisting of the following steps: (1) if a claimant is engaged in substantial gainful activity, he will not be found disabled regardless of the

medical findings, 20 C.F.R § 404.1520(b); (2) a claimant who does not have a "severe impairment" will not be found to be disabled, 20 C.F.R § 404.1520(c); (3) a claimant who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors, 20 C.F.R § 404.1520(d); (4) if a claimant can still perform his past work, he is not disabled, 20 C.F.R § 404.1520(e); and (5) if a claimant's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed, 20 C.F.R § 404.1520(f).

Bullock asserts that the ALJ erred at step three of the five-step process by failing to explain why her impairment did not meet listing 1.02(A) under the Listing of Impairments. Bullock cites no binding authority for the contention that the ALJ is required to articulate the reasons supporting his finding under step three. Thus, the sole question before this court is whether substantial evidence supports the ALJ's finding that Bullock did not have an impairment under Appendix 1 of the regulations. See Selders v. Sullivan, 914 F.2d 614 (5th Cir. 1990) (determining whether substantial evidence supported the ALJ's finding, though Appellant argued that ALJ erred in failing to explain why Appellant did not meet step three requirements).

Bullock argues that she presented evidence at the administrative level which established that her impairment met the requirements for Listing 1.02(A) of the Listing of Impairments. The listing provides as follows:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony

> destruction, or ankylosis of the affected joint(s). With:
>
> A.     Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1 .OOB2b;

20 C.F.R. pt. 404, Subt. P, app. 1 , Listing 1 .02. According to the regulation, the following are examples of ineffective ambulation:

> [T]he inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F .R. pt . 404, Subt . P, app . 1, § 1 .00(B)(2)(b). In order for Bullock to show that her impairment matches this listing, she must meet all of the specified medical criteria. Sullivan v. Zebley 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

While it is clear that she suffers from severe pain in her right knee, in light of the deferential standard of review applicable in this case as well as our review of the record, we hold that there is substantial evidence to support the ALJ's finding that Bullock did not meet the requirements of Listing 1.02(A). Most notably, Bullock has never been diagnosed with subluxation, contracture, bony or fibrous ankylosis or instability as required by 1.02(A). Further, even if Bullock met the requirements of 1.02(A), Bullock would also have to show that she is unable to ambulate effectively as described in Listing 1.00(B)(2)(b), which is also not supported by the record. The record indicates that Bullock is able to walk with the help of a single cane, not a walker, two crutches or two canes.

Bullock has indicated that she is able to climb stairs with the use of a handrail and at her last documented visit to a physician, Dr. Faust, she indicated that she able to walk two blocks at a time. Therefore, we conclude that the decision denying benefits to Bullock was supported by substantial evidence in the record, such that a reasonable mind might accept as adequate to support the conclusion reached in this case. See Randall, 956 F.2d at 109.

As a second point of error, Bullock contends that under this Court's precedent in Newton, the ALJ was required to discuss the factors set forth in 20 C.F.R. § 404.1527(d)(2) before discounting the opinion of her treating physician, Dr. Meyer. However, the court in Newton also states that consideration of the 20. C.F.R. § 404.1527(d)(2) factors is only necessary where there is no "reliable medical evidence from a treating or examining physician controverting the claimant's treating physician." 209 F.3d at 453. Here, the ALJ was presented with the patient's medical history, as well as opinions from Dr. Meyer, the patient's treating physician, and Dr. Faust, the state medical examiner who examined Bullock. After reviewing the opinions of both doctors, the ALJ determined Dr. Faust's opinion to be more credible in light of the entire record. Because Faust was an examining physician, under Newton it was unnecessary for the ALJ to discuss the 20. C.F.R. § 404.1527(d)(2) factors in choosing to afford more weight to his opinion, rather than the opinion of Dr. Meyer. See id; See also Beasley v. Barnhart, 191 Fed. Appx. 331, 336 (5th Cir. 2006) (finding that because the consulting physician did not examine the claimant, the ALJ could not reject the opinion of claimant's treating physician without an analysis of the treating physician views under 20. C.F.R. § 404.1527(d)(2)).

## III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.