# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 15, 2008

Charles R. Fulbruge III
Clerk

No. 07-61012
Summary Calendar

JAMIE D. WEARY,

Plaintiff-Appellant,

V.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appelle.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 06-188

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Jamie D. Weary appeals the district court's decision affirming the Commissioner's denial of her claim for Disability Insurance Benefits and Supplemental Security Income ("SSI") payments under Titles II and XVI of the Social Security Act, 42 U.S.C §§ 423 and 1382c(a)(3). For the following reasons, we affirm the district court's decision.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. <u>Factual and Procedural Background</u>

Plaintiff-Appellant Weary is a thirty-one year old female with an eleventh grade education. The record indicates that Weary first complained of pain on September 15, 2003, when, while working as a housekeeper at Marion General Hospital ("Marion General"), she felt a pop in her back as she lifted a full bag of bed linens. She was evaluated at Marion General's emergency room that same day and released. She continued to work as a housekeeper for six more weeks, until October 29, 2003, when she claims that her back pain was so constant and severe that she could no longer endure working. On October 29, 2003, she again went to Marion General's emergency room where she was examined by Dr. Brian McGraw. Dr. McGraw noted that Weary was experiencing mild paralumbar spasms, and upon conducting an x-ray, diagnosed her with lower back pain and probable chronic strain. She was scheduled for an MRI the following day.

On November 13, 2003, Weary followed-up with Dr. Kevin Holmes, an attending physician at Marion General, who assessed her with an annular tear around L5-S1 with radicular back pain. On December 4, 2003, Weary visited Dr. James Antinnes at the Hattiesburg Clinic and reported that she was experiencing lower back pain, radiating into her legs. Dr. Antinnes noted that Weary demonstrated severely limited range of motion of her back and that her posture was stooped. He remarked that her x-rays appeared to be essentially normal, and noted that the MRI conducted on October 30, 2003, revealed mild disc degeneration at L4-5 and L5-S1, although there were no obvious herniations or neural compromise. Based on Dr. Antinnes recommendation, Weary began physical therapy. On December 16, 2003, Weary went to see Dr. Michael Molleston, a neurosurgeon at the Hattiesburg Neurosurgery Clinic, to whom she was referred by Dr. Holmes. Dr. Molleston recommended that Weary undergo surgery and told her to stop physical therapy and work until further notice.

Weary decided to put off surgery, continue physical therapy, and explore other methods of conservative care to relieve her pain.

After experiencing no improvement in her condition from physical therapy, Weary went to see Dr. Moses Jones at Jackson Neurosurgery and Spine Associates on January 8, 2004. Her straight leg raise test was negative and she was able to sit on the exam table with her legs fully extended at a 90-degree angle. Dr. Jones reviewed Weary's MRI from October 30, 2003, and did not find any significant abnormalities. While Dr. Jones did see some minimal degenerative changes in the lumbar spine, he found no evidence of disc herniation. He remarked that Weary's "symptoms follow in no organic disease pattern and seem clearly out of proportion to any objective findings." Finding no neurological reason why she could not resume all normal activities, Dr. Jones recommended that Weary be treated with physical therapy and rehabilitation. He felt that surgery was unwarranted.

On February 24, 2004, Weary returned to Dr. Molleston who recommended that she have a lumbar discogram to determine which discs were causing her pain. He also was of the opinion that Dr. Jones's report contained a number of inaccuracies and "represented a company's-doctor type medical report." Shortly thereafter, on March 9, 2004, Weary was seen by Dr. David McKellar who assessed her with lumbar disc displacement. Dr. McKellar performed a lumbar discogram which revealed marked degeneration of disc material at L5-S1 and severe spinal stenosis at L4-5 and L5-S1. He gave Weary a lumbar epidural steroidal injection and also conducted a CT scan of her lumbar spine. The CT scan also showed degeneration of disc material at L4-5 and L5-S1.

On April 30, 2004, Weary underwent surgery which consisted of a lumbar laminectomy at L4-5 and L5-S1, with micro dissection and interbody fusion with rods and screws. The post-operation discharge sheet indicated that Weary's condition had improved, and that within two days after surgery, she was able to

stand and walk, and was doing well with physical therapy. Weary followed up with Dr. Molleston on June 30, 2004. Dr. Molleston noted that Weary was doing "somewhat" better, and was no longer using a wheelchair or a walker, though she did use a cane. Dr. Molleston cleared Weary to drive, but recommended that she not bend at the waist or perform strenuous activity. He did not feel that she was ready for rehabilitation. At her August 2004 follow-up, Dr. Molleston noted that Weary was doing relatively well and told her she could discontinue wearing her lumbar corset brace. Weary reported some swelling in her thighs which Dr. Molleston attributed to inactivity. He recommended that she try walking for ten minutes, twice a day. On August 19, 2004, Weary was examined by Dr. Victor Bazzone, an independent neurosurgeon. Weary reported that she felt 60% better than she did before surgery, but was still experiencing pain. Dr. Bazzone noted that Weary was morbidly obese and that this was one of the primary causes of her pain.[1] Although Weary's straight leg raise test was positive at 50 degrees, Dr. Bazzone could not find any "hard fast neurological findings" related to her symptoms. He was of the opinion that she had fully recuperated from her surgery and that she had reached maximum medical improvement. To manage her pain, Dr. Bazzone recommended that Weary lose significant weight, exercise, and continue her anti-inflammatory medication.

On December 16, 2004, Weary filed an application for disability benefits and SSI, claiming that she had been unable to work since September 15, 2003, because of a back injury. Her initial application was denied and Weary filed for reconsideration. In connection with her application for reconsideration, an independent review of Weary's medical files was conducted by Dr. Glenn James, a state agency physician and disability examiner, as well as by Angela Moore,

---

[1] At the time of this exam, Weary was 5'3'' tall and weighed 240 pounds. She reported that prior to her injury, she weighed only 200 pounds. According to Dr. Bazzone, her prior weight still placed her in the category of morbidly obese.

a vocational examiner. Ms. Moore found that Weary had the residual functional capacity for light work. Dr. James rated Weary as being able to lift up to twenty pounds occasionally, and ten pounds frequently. He also found that Weary had no postural limitations. Weary's application for reconsideration was subsequently denied. Weary then requested a hearing before an Administrative Law Judge ("ALJ"). In the interim, Weary underwent a physical impairment rating. She was assigned a 20% whole person impairment. Dr. J. Stephen Beam conducted the impairment assessment and noted that Weary became tearful upon examination, but had no other visible signs of active pain. Because Weary stated that the physical movements were too painful, Dr. Beam based the impairment rating on Weary's medical history and subjective symptoms.

The administrative hearing was held on August 17, 2005; Weary and Donald Woodall, a vocational expert, testified. Weary testified that the surgery had not improved her symptoms, and that physical therapy and pain medication were equally ineffective. She complained of daily pain in her back, buttocks, arms, and thighs; she rated the pain an eight out of ten, with ten being the most painful. She stated that she lived with her grandmother and next door to her mother, both of whom were responsible for her daily care, such as bathing and combing her hair. She further testified that she stayed at home all day either laying or sitting down, and that she was driven to the grocery store once a week and to church once a month. Finally, Weary testified that she had worked as a housekeeper, re-packer, poultry dressing worker, wire harness assembler, furniture wiper, and car parts inspector. Woodall testified that Weary's past work history would be classified as medium unskilled, light unskilled, light semi-skilled, and sedentary unskilled.

Based on this testimony and the medical evidence, the ALJ determined that Weary was not disabled within the meaning of the Social Security Act because her impairments did not meet or equal an impairment in the

regulations, and she could return to her past work.  Weary filed an intra-agency appeal, to which she attached an August 23, 2005, report from Dr. Molleston. Dr. Molleston noted that Weary had reached maximum medical improvement, but continued to walk with a cane.  He was of the opinion that Weary was "totally and permanently disabled for any substantial gainful activity" and that she could not sit or stand for over two hours in an eight hour day.  The Appeals Council affirmed the ALJ's decision.  Weary then filed a complaint in the district court seeking judicial review of the agency's final determination. Weary filed a motion for summary judgment.  The Commissioner filed a motion for an order affirming the agency's decision.  The magistrate judge found that the ALJ's determination that Weary's impairments did not meet an impairment listed in the regulations was not supported by substantial evidence.  He also found that the ALJ's conclusion that Weary could return to her past relevant work was unsupported.  He recommended that the district court reverse the agency's decision. The Commissioner objected to the magistrate's recommendations. The district court rejected the magistrate's recommendation finding that the agency's decision was supported by substantial evidence.  On November 8, 2007, the district court entered judgment dismissing Weary's complaint.  Weary timely appealed.

## II. Discussion

On appeal, Weary makes the following arguments: (1) the ALJ improperly determined that her impairments were not severe enough to meet a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1; and (2) the ALJ improperly determined that she possessed the residual functional capacity to perform light exertional work.

Under the Social Security Act, 42 U.S.C. § 405(g), this court's review of the Commissioner's denial of disability benefits and SSI is limited to determining: (1) whether substantial evidence supports the final decision; and (2) whether

proper legal standards were used to evaluate the evidence. See Higginbotham v. Barnhart, 405 F.3d 332, 335 (5th Cir. 2005). Where the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is defined as "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). Conflicts in the evidence are for the Commissioner to resolve. Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990). While we must scrutinize the record to determine the reasonableness of the decision reached by the ALJ, we must not reweigh the evidence, try the issues de novo, or substitute our judgment for that of the ALJ's. Randall v. Sullivan, 956 F.2d 105, 109 (5th Cir. 1992).

In evaluating a claim of disability, the ALJ conducts the following five-step sequential inquiry: (1) if a claimant is engaged in substantial gainful activity, she will not be found disabled regardless of the medical findings, 20 C.F.R. § 404.1520(b); (2) a claimant who does not have a "severe impairment" will not be found to be disabled, 20 C.F.R. § 404.1520(c); (3) a claimant who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors, 20 C.F.R. § 404.1520(d); (4) if a claimant can still perform her past work, she is not disabled, 20 C.F.R. § 404.1520(e); and (5) if a claimant's impairment prevents her from performing past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed, 20 C.F.R. § 404.1520(f). We turn now to the issues on appeal.

Weary first argues that the ALJ erred at step three of the sequential inquiry when he determined that her impairments were not severe enough to meet or equal one of the listed impairments. At the previous step, the ALJ found

7

that Weary suffered from lumbar disc disease and obesity, which were severe within the meaning of the regulations. However, at step-three, the ALJ concluded that those impairments were not severe enough to meet or medically equal, either singly or in combination, one of the listed impairments. Weary maintains that her lumbar disc disease, as exacerbated by her obesity, should have been evaluated under the criteria for an impairment of the Musculoskeletal System, specifically under § 1.04C of the Listing Impairments to Appendix 1.[2] She claims that the combined effect of the two impairments have limited her ability to ambulate effectively.

Section 1.04C requires that a claimant provide medical evidence of lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in the inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04C. In turn, an inability to ambulate effectively is defined as an extreme limitation on the ability to walk, i.e., an impairment that interferes very seriously with the individual's ability to initiate, sustain, or complete activities. Id. at § 1.00B2b(1). This definition includes generally having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. Id. Some examples of the inability to ambulate effectively include the inability to walk without the use of a walker, two crutches, or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to use standard public transportation;

---

[2] Although obesity has been removed from the listed impairments, it may be a factor in both the "meets" and "equals" determinations if there is an impairment that, in combination with obesity, meets the requirements of a listing. See Social Security Ruling 02-1p; see also 64 F.R. §§ 46122 and 46124 (explaining that because of the combined effect of obesity and the other impairments, obese individuals may be found to have impairments that meet other listings or equal the severity of other listings). The ALJ found that Weary's lumbar disc disease was a severe impairment within the meaning of the regulations.

the inability to carry out routine ambulatory activities, such as shopping and banking; or the inability to climb a few steps at a reasonable pace with the use of a single hand rail. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b(2).

Although it is clear that Weary continues to suffer from pain in her back, buttocks, arms and thighs, in light of the deferential standard of review applicable in this case, our review of the record demonstrates that there is substantial evidence to support the ALJ's finding that Weary's impairments did not meet or equal an impairment under § 1.04C. The medical evidence provided by Weary shows that, prior to her surgery, at least one physician diagnosed her with spinal stenosis and that an MRI and CT revealed disc degeneration in her lumbar spine. However, her post-surgery medical records belie her claim that she cannot ambulate effectively. Her post-operation discharge report shows that she was walking within two days of the surgery. Further, at her August 19, 2004, examination with Dr. Bazzone, Weary reported a 60% improvement in her condition since the operation. Although Dr. Bazzone observed that Weary used a cane, reliance on a single cane does not limit the function of both upper extremities, as would reliance on a walker, two crutches or two canes as required under § 1.00B2b(1). Moreover, even though Dr. Molleston opined that Weary was "permanently disabled from substantial gainful activity," statements from a physician as to whether a patient is "disabled" or "unable to work" are legal conclusions that are reserved for the ALJ to determine. See Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. §§ 404.1527(e)(1) and (e)(3)). Therefore, we conclude that substantial evidence supported the ALJ's determination that Weary's impairments did not meet or equal Listing Impairment § 1.04C.

Weary next claims that the ALJ improperly determined that she possessed the residual functional capacity to perform light exertional work and that she could return to her past relevant work. The fourth step of the five-step inquiry

requires the ALJ to determine a claimant's residual functional capacity, defined as assessing the type of work an individual can perform despite the limiting effects of her impairments. 20 C.F.R. §§ 404.1545 and 416.945. The ALJ found that, except for five months post-surgery, Weary had the residual functional capacity to perform light exertional work. He based his decision on the medical evidence, as well as the hearing testimony of Weary and Woodall, the vocational expert. Light work, in turn, is defined as lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, as well as walking or standing for approximately six hours out of an eight-hour work day. 20 C.F.R. §§ 404.1567(b) and 416.967(b). We conclude that substantial evidence supported the ALJ's determination that Weary had the residual functional capacity to do light work and that she could therefore, return to her past relevant work.

While an ALJ must take into account a claimant's subjective allegations of pain in determining her residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989). The mere existence of pain does not automatically create grounds for disability , and subjective evidence of pain will not take precedence over conflicting medical evidence. Id. Weary's subjective allegations of continued pain after the surgery were extensive. She testified at the hearing that the surgery had not improved her symptoms, and that physical therapy and pain medication were equally ineffective. She rated her daily pain an eight out of ten, with ten being the most painful. However, the objective medical evidence conflicts with Weary's allegations. In his August 19, 2004, report, Dr. Bazzone noted that Weary had recuperated well from her surgery and that there were no hard and fast neurological findings related to her continued pain. He advised that Weary lose weight to reduce any residual pain she was experiencing. By

August 2005, Dr. Molleston was also of the opinion that Weary had reached maximum medical improvement, and he too advised her to reduce her weight. Finally, both Dr. James and vocational expert Angela Moore concluded that Weary had the residual functional capacity to do light work, in that she could lift up to twenty pounds, and ten pounds frequently. Based on the testimony of vocational expert Donald Woodall that Weary's past work included light unskilled and semi-skilled work, the ALJ concluded that Weary could return to her past relevant work. Consequently, our review of the record reveals that substantial evidence supported the ALJ's determination that Weary had the residual functional capacity to do light work, and that she could return to her past relevant work.

## III. Conclusion

For the foregoing reasons we AFFIRM the ruling of the district court.